GALEN *et al. v.* BROWN *et al.*

In a chattel mortgage, the property being described as "11 M of pine lumber, now in the shop of the mortgagor," it appearing that but one-fifth of that quantity was then in the shop, parol evidence is admissible to show that the property mortgaged was that quantity of lumber just before purchased by the mortgagor, only a part of which had been delivered to him, the remainder being still in the possession of the vendor.

APPEAL from a judgment of the Supreme Court. The action was to recover the possession of a quantity of lumber sawed out for doors, sash and blinds, and a quantity of lumber not sawed, &c. The defendants answered, justifying under an attachment issued by a justice of the peace to Brown, as a constable, against the property of one John W. Marrion on the application of the defendant Buckland.

On the trial these facts appeared: In April and May, 1855, John W. Marrion was engaged in the business of manufacturing doors, windows, sash and blinds, occupying a shop in Buckland's buildings, located on Minerva alley, in the city of Rochester. On the 10th May, 1855, one Parsons, a lumber dealer, sold to Marrion 12,500 feet of seasoned pine lumber for the price of $225.50. Previous to this, Marrion had little or no lumber in his shop. But two one-horse loads of the lumber were delivered before the 15th May. Parsons, at that date, refused to deliver any more until he should receive Marrion's note for $125, indorsed by Galen & Moore, in part payment for the lumber. Having received from Marrion, on the 15th May, the note indorsed by Galen & Moore, he continued the delivery of the lumber, which delivery was fully completed before the 31st May, when Parsons took Marrion's note, without indorsement, for the balance of the purchase price.

On the 15th May, 1855, Marrion, when procuring the indorsement of the defendants Galen & Moore on the $125 note, executed a chattel mortgage to them by way of security. The

instrument described the property mortgaged as " *eleven thousand feet of pine lumber of various thicknesses, now in the shop occupied by the said Marrion, in Leonard Buckland's building, located on Minerva alley, in the city of Rochester.*" At the time the mortgage was executed it was verbally agreed between Marrion and the plaintiffs that he would make doors out of the lumber and deliver them to the plaintiffs. The mortgage was not due until the 15th September, 1855; but Galen & Moore were empowered at any time they should deem the lumber, or any part thereof, unsafe in the place where it then was, to take possession of it and sell it at public or private sale previous to the time mentioned for the payment of the debt.

Marrion continued to manufacture doors and sash from the lumber until the early part of July. He delivered some doors to the plaintiffs. On or before the 9th July Marrion absconded, and on that day the plaintiff, Moore, was at his shop giving directions about taking the property away. He had taken about half of it away. Some of it was on a cart, and the defendants seized it by virtue of an attachment against Marrion. Of the property attached were twenty-six doors, a quantity of dressed and undressed lumber, &c. The plaintiffs claimed to own and hold the property under the chattel mortgage, and the defendants by virtue of the attachment against Marrion.

The court refused to nonsuit the plaintiffs, and charged the jury that the mortgage of the 15th May covered the lumber in the possession of Parsons, which had been previously sold to Marrion, and was afterwards delivered at Marrion's shop in pursuance of such sale, as well as the lumber which was delivered before the mortgage was executed, provided the jury believed it to have been all one parcel and intended to be embraced within the mortgage. The defendants excepted.

*James C. Cochrane,* for the appellants.

*Charles H. Clark,* for the respondents.

Galen *v.* Brown.

WRIGHT, J. To refuse to nonsuit for any of the reasons suggested at the circuit, was not error. The chattel mortgage of the plaintiffs, it was conceded, covered the property in controversy; and the evidence tended strongly to show the mortgagees in possession, when the defendants assumed to take it under the attachment. If the mortgagees had reduced the property to their possession, as the instrument empowered them to do, at the time the attachment was levied, Marrion had no interest in it subject to levy and sale. It is only when default has not occurred and the mortgagor is in possession, and is entitled to the possession for a definite period, that the chattels mortgaged may be seized upon execution against the mortgagor, or that the latter has any leviable interest therein. (*Mattison* v. *Baucus*, 1 Comst., 295; *Hull* v. *Carnley*, 1 Kern., 501.) Whether the mortgagor or mortgagees were in possession when the defendants seized the property, was a question for the jury, and instead of nonsuiting the plaintiffs, it would have been error in the judge at the circuit to have withheld the question from the jury.

If there be really any difficulty in the case, it arises from the terms of the mortgage of the 15th May. But I am of the opinion that there is no insuperable difficulty here. The writing describes the property mortgaged as "eleven thousand feet of pine lumber, of various thicknesses, now in the shop occupied by the said Marrion, in Leonard Buckland's building, located on Minerva alley, in the city of Rochester." There was no such quantity of lumber in Marrion's shop at the time the mortgage was executed. The defendants' evidence showed that there was in the shop not probably to exceed one-fifth of that quantity. There can be no doubt, from the extrinsic evidence, that the lumber intended to be mortgaged was the parcel purchased by Marrion from Parsons, on the 10th May, part delivery of which had been made at Marrion's shop; and if the description in the instrument had been merely "eleven thousand feet of pine lumber of various thicknesses," and parol proof must necessarily have been resorted to to identify the subject of the mortgage, the judge might properly have instructed the jury

that it was the lumber bought from Parsons which the mortgage was intended to and did cover. But the instrument describes the property mortgaged as being in the shop of Marrion, at the date of its execution; and it is urged that, reading the description together, there is no latent ambiguity to be explained by extrinsic proof. This would be so, if the parol evidence in the case did not create an ambiguity. When it is shown that but a small quantity of lumber was in Marrion's shop, not one-fifth of the quantity mortgaged, an ambiguity arises explainable by parol. A latent ambiguity created by parol proof is open to parol explanation. This in no sense infringes upon the rule that a written contract cannot be varied or altered by parol, but that such writing is to be deemed to express the intent of the parties. Marrion assumed to transfer 11,000 feet of lumber, which is stated to be in his shop on Minerva alley. It is made to appear that there was not at the time 2,000 feet in such shop. It is clear, therefore, that he intended to mortgage lumber other than that which was actually in the shop when the instrument was executed. The mortgage was of a specific quantity of lumber not in the place where the instrument described it to be. Thus an ambiguity is created which it is admissible to explain by extrinsic evidence.

The judge charged the jury, substantially, that the mortgage covered the lumber sold by Parsons to Marrion, as well that which was delivered at the shop of the latter before as after the execution of the mortgage, if they believed it to have been all one parcel and intended to be embraced in it. There was no error in this to the prejudice of the defendants, provided parol evidence could be resorted to in explanation of the written agreement. This evidence, which was introduced into the case without objection, and by the parties indiscriminately, and to which, I think, no valid legal objection could be interposed, showed conclusively that the parcel of lumber intended to be, and which was, mortgaged was that purchased from Parsons on the 10th May, only two loads of which had been delivered at Marrion's shop, on the 15th May. Marrion

had agreed to give a note for $125, indorsed by the plaintiffs in part payment for the lumber; and, at the latter date, Parsons suspended the delivery until the note was procured. To secure the defendants against liability, Marrion executed to them a mortgage on the lumber. The note was then indorsed by the defendants, and delivered to Parsons, and the latter resumed the delivery of the lumber at Marrion's shop. Upon the uncontroverted proof in the case, there was no question for the jury as to the intention to mortgage the entire parcel purchased from Parsons.

I think the judgment should be affirmed.

SELDEN, J. If the lumber in controversy in this case was included in the mortgage from Marrion to the plaintiffs, then Marrion had no interest upon which an execution could be levied. To create such an interest, there must be, at least, a right of possession in the mortgagor for some definite period. Here the mortgagees had the right, if they deemed the property unsafe, to take possession at any time—a clause expressly designed to protect the mortgagees against the claims of the general creditors of the mortgagor. This clause left, I think, no rights of property in the mortgagor which could be levied upon by a creditor. If, however, it be conceded that Marrion, the mortgagor, retained a leviable interest until the plaintiffs elected to divest him of that interest by taking the property into their own possession, under the clause in the mortgage giving them that right, the proof shows that this had been done. On the 9th of July, when the attachment was levied, two cartloads of the doors which had been made from the lumber had been actually drawn away by the plaintiffs, and a portion of the residue was then upon the cart preparatory to being removed, leaving only a few doors and a little lumber in the shop. Under these circumstances, the whole of the lumber may be considered as then in the actual possession of the plaintiffs; but if not, it was clearly such an exercise of their rights as effectually terminated all legal interest in the property on the part of Marrion.

The only serious question which the case presents is, whether the lumber taken by the defendants was included in the plaintiffs' mortgage. The mortgage describes the lumber as "now in the shop occupied by the said Marrion;" while, from the proof, it is, perhaps, to be inferred that a portion of the lumber was then in the yard of Mr. Parsons, from whom it had been purchased by Marrion. At all events, the appellants have a right to assume that the jury would have so found. Upon the question of fact, whether it was intended to include in the mortgage that part of the lumber purchased of Parsons which remained to be delivered, if any, there can, I think, be no doubt, provided the parol evidence tending to establish this was admissible for the purpose. The very object for which the plaintiffs indorsed the note of Marrion was to enable him to obtain that portion of the lumber which Parsons swears he had refused to deliver without security. The mortgage was given to indemnify the plaintiffs for this indorsement, and the probability seems strong that the parties intended that the plaintiffs should have a lien upon the lumber which was thus procured solely by means of their indorsement, for their indemnity; and when we take into consideration the fact that the quantity mentioned in the mortgage is nearly the same as that purchased by Mr. Parsons, that this lumber was all bought together in one parcel, and that nothing appears to show that the shop of Marrion contained any other lumber, this probability rises almost to a certainty. The slight discrepancy between the amount bought of Parsons and that mentioned in the mortgage, is accounted for by the fact that a portion of the lumber had been previously manufactured into doors. But the question is, can this evidence be received to explain, or to aid in the interpretation of the phrase, "now in the shop," &c.? There is nothing equivocal or ambiguous in this language. It is clear and explicit, and declares, in plain terms, that the lumber mortgaged was that then in the shop of Marrion. Taken, therefore, by itself, aside from all extrinsic proof, there is nothing in the mortgage which would authorize a resort to parol evidence to explain its terms. An ambiguity, however, is raised

Galen *v.* Brown.

by the evidence in the case. The mortgage describes the property mortgaged as consisting of 11,000 feet of lumber, &c. Now, it does not appear from the case that Marrion had any lumber in his shop except that purchased of Mr. Parsons. The contrary is, I think, to be inferred from the whole evidence in the case, and especially from the testimony of the witness Swarz, who states that when the plaintiffs had removed what they took out of the shop, "there was nothing left in the shop but a few doors, and lumber sawed into doors, and an old bench." These doors were made from the lumber bought of Parsons. What 11,000 feet of lumber, then, was the mortgage intended to embrace? If there had been that quantity, or near that quantity in the shop, no parol evidence could have been received to show that any other was intended. But when it is shown that there was none there of any consequence, except that bought of Mr. Parsons, and that but a portion of that had been delivered, it becomes evident that the language of the mortgage fails fully to express the intention of the parties. This, then, is a latent ambiguity or uncertainty, which is created by the parol evidence in the case, and is one, therefore, which may be explained by any evidence, written or unwritten, within reach of the parties. This is decisive of the case, as the evidence, if admissible, leaves no doubt as to the real intention of the parties.

COMSTOCK, Ch. J., DAVIES and BACON, Js., concurred; DENIO, WELLES and CLERKE, Js., dissented.

Judgment affirmed.