(Surrogate's Court, Rensselaer County. December, 1895.)

1. WILLS—CONSTRUCTION—CASH IN BANK.

At the time testatrix made her will, containing bequests amounting to $6,500, and directing that, "should there be any money in the bank to my credit after the preceding sums have been paid," such money should go to a certain charitable association, she had but $400 cash in the bank, and about $7,300 in securities. At the time of her death, she had over $5,000 in the bank and $11,000 in securities. Her property was derived from the income of a fund left by her husband. The income was received by the president of the bank for testatrix, and he invested for her such sums as she did not use. *Held*, that the testatrix intended such legacies to be paid out of her entire estate, whether it consisted of cash in bank or securities.

2. CHARITIES—VALIDITY OF BEQUEST.

Under Laws 1860, c. 360, § 1, forbidding any person having a husband, wife, child, or parent to devise or bequeath to a charitable society more than half of the estate, a testator cannot give to two or more charitable objects more than he can give to one.

Judicial settlement of the accounts of George A. Stone, as executor of the will of Helen Torrance. Testatrix, who left surviving her two sons and a granddaughter, gave general legacies, amounting to $6,500, and provided by the seventh clause of the will that, "should there be any money in the bank to my credit after the preceding sums have been paid, I give and bequeath the same to the board of ministerial relief of the United Presbyterian Church of North America." At the date of the will, testatrix had $400 in cash in bank, and about $7,300 which the president of the bank had invested in securities for her. At the time of her death, five years later, the amount in bank was over $5,000, and her securities amounted to $11,000. Mr. Stone, the executor, was president of the bank, and acted as testatrix's agent in investing her money, which he did without consulting her. The money so invested was the income left to testatrix by her husband, and it was received by Mr. Stone.

E. W. Douglas, for the executor.

Clarence E. Akin, for the board of ministerial relief of the United Presbyterian Church of North America.

George R. Donnan, for the next of kin.

LANSING, S. The sole controversy in this case is as to the proper construction of the seventh clause of the will, which is stated above. A narrow and limited construction of the clause, "Should there be any money in the bank to my credit after the preceding sums have been paid [which amount to $6,000], I give it to the board of ministerial relief," would render that clause entirely inoperative; for neither at the time of making her will nor at her death did she have enough money (strictly such) to her credit in the bank to pay the general legacies, and the result would be that the legacies which she had provided for the several objects of her bounty could not

be paid in full; and it is further obvious that she would die intestate as to the body of her estate, which consisted of securities in the possession of Mr. Stone, readily convertible into money, to the amount, at the time of her death, of $11,000.

The cardinal rule in the interpretation of wills, as other instruments, which must be followed if consistent with the rules of law, is to ascertain the intent of the testator. This intent must be first sought in the language of the instrument. The intent inferable from the language of one clause may be qualified or changed by other portions of the will evincing a different intent. Hoppock v. Tucker, 59 N. Y. 202. Another rule is that every clause of the will must receive a reasonable construction, and the whole rendered effective, if possible. Extrinsic evidence may also be employed, not to contradict the will, but to interpret it in accordance with the intent of the testator. When extrinsic evidence, properly introduced, creates an ambiguity in an instrument otherwise reasonable and clear in its language, the ambiguity may be explained by the same kind of evidence. Galen v. Brown, 22 N. Y. 37; Tillotson v. Race, Id. 126; Abb. Tr. Ev. 130, note; In re Hastings, 6 Dem. Sur. 307. Another well-settled rule of interpretation of wills is that where a will is capable of two constructions, one of which will dispose of the entire estate of the testator, and the other leave a portion undisposed of, the former will be adopted. Vernon v. Vernon, 53 N. Y. 351; Lamb v. Lamb, 131 N. Y. 227, 30 N. E. 133. Applying these rules of interpretation to this instrument, I am of the opinion that the testatrix, intending, as it must be assumed, to dispose of her entire estate by will, did not intend to cut down the provisions which she had made for the objects of her bounty to the sum which she might chance to have at her death in cash at the bank, or subject her beneficiary in the seventh clause of the will to the hazard of receiving a nominal sum or none at all, if she did not chance to have more than the $6,000 in cash to her credit at the time of her death. The evidence shows that at the time of making her will she had only the sum of $400 subject to draft at the bank, and she knew it. It further shows that Mr. Stone, the president of the bank, was her financial agent, handled her funds as he did his own, converting her securities into money and her money into securities, as he judged for her interest, informing her from time to time of what he had done. It further appears that at the time of the making of her will she was possessed of about $7,700, including securities and cash in the bank of $400, and that by her will, if she counted the securities as money, she had sufficient to pay all the general legacies in full, and about $1,700 would fall under the seventh clause of her will to the ministerial relief association, which was a very reasonable disposition of her property in view of her apparent desire to dispose of it for benevolent purposes. I am very clear, taking the will and all the circumstances together, and the fact that the will was prepared by a layman, that by the language "money to my credit in the bank" she meant not only her money, but also her securities in the hands of Mr. Stone, the president of the bank, using the word

"money" as synonymous with and embracing securities; that by the phrase "to my credit in the bank" she meant her money and securities in the hands of Mr. Stone; and that she intended to give the rest and residue of her estate to the board of ministerial relief. This, I think, is the only reasonable construction to be given to her language under the circumstances disclosed in this case; for, at the time of making the will, she directs, "after the preceding sums have been paid," which amounted to the sum of $6,000, then, "should there be any money in the bank" to her credit, that the same should go to the board of ministerial relief, showing clearly that she did not intend to die intestate as to any of her property, and also that she regarded the securities as money to her credit in the bank. This interpretation of her language renders all the provisions of the will operative, and is in harmony with the facts and circumstances connected with the disclosure of the value and situation of her estate and the production of the will. Treating, then, the $16,000 in the hands of Mr. Stone, her agent and executor, as "money in the bank to her credit," the general legacies must be first paid, and the balance will fall in the seventh or residuary clause of her will, as the testatrix doubtless intended.

But there is an arbitrary statute which has not been considered, and was doubtless unknown to the testatrix and the draftsman of her will, which reads as follows:

"No person having a husband, wife, child or parent shall by his or her last will and testament, devise or bequeath to any benevolent, charitable, * * * religious or missionary society, * * * or corporation, more than one-half part of his or her estate after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more." Laws 1860, c. 360, § 1.

A testator cannot give to two or more charitable objects more than he can give to a single object, viz. more than one-half of his estate. Chamberlain v. Chamberlain, 43 N. Y. 425. Where a testator makes devises which are invalid, he dies intestate as to such portion as is not effectually disposed of by will. Lefevre v. Lefevre, 59 N. Y. 446.

Applying this statute to the distribution which would otherwise be made, it must be modified as follows: (1) There must be deducted from the entire estate the debts of testatrix, the expenses of administration, including commissions. (2) The remainder must be divided into two equal parts, one moiety of which must be distributed to the next of kin of the deceased, in accordance with the statute of distribution; out of the remaining moiety there must be paid the several legacies, amounting to the sum of $6,500, provided in the will and the balance must be paid, under the seventh clause of the will, to the board of ministerial relief of the United Presbyterian Church of North America.

Decreed accordingly.