(31 Misc. Rep. 221.)

### EAKIN v. KNABE et al.

(Supreme Court, Trial Term, New York County. April 19, 1900.)

1. WILLS—CONSTRUCTION.

Two brothers inherited, respectively, one-ninth of the north half of a piece of property from their uncle, and by the will of their grandfather each received one-third of the south half of the same property. They died testate, leaving plaintiff, their nephew, as their heir at law, and by their wills each devised to their aunts as follows: "All of my right, title, and interest" in said property "coming to me through the will of my grandfather." Held, that the devisees took the testators' entire interest in the property, to the exclusion of the plaintiff, since the words "coming to me through the will of my grandfather" were descriptive of the property devised, and not intended as a limitation of the devises.

2. PARTITION—TENANT IN COMMON—COMPENSATION FOR IMPROVEMENTS.

Where a tenant in common in possession has made valuable improvements, he is entitled to compensation therefor, where the property is partitioned, as follows: First, the value of the land without the improvements should be ascertained; second, the value of the improvements; and, third, the value of the use and occupation of the property. And after each tenant has received the value of his portion of the land exclusive of the improvements, and his part of its rental value during the period of occupancy, the balance, if any, should be paid to the tenant in possession, for his improvements.

Action by John Eakin against Diederick Knabe and another for partition of real property. Partition granted.

Welch & Daniels, for plaintiff.

Parsons, Shepard & Ogden, for defendants.

McADAM, J. The action is for the partition of certain real property, in which the plaintiff claims an interest as tenant in common. He alleges that he inherited this interest from John B. Eakin, who he claimed was his father. The plaintiff's right as the heir at law of John B. Eakin was disputed, and the issue was framed and submitted to the jury for a special finding, as follows: "Q. Was the plaintiff the only son and legitimate heir of John B. Eakin, deceased?"—which question the jury properly answered in the affirmative. There remain to be determined the further questions (1) as to what interest or share the plaintiff is entitled to in the premises; and (2) whether the defendant, who purchased the premises in good faith, without notice of the plaintiff's rights, is to be allowed the value of the improvements made by him upon the premises, and, if so, on what conditions and limitations.

1. As to the plaintiff's interest or share in the property: The common source of title is John Eakin. He died on the 21st day of March, 1847, the owner of the premises in question. He left a will, which was duly admitted to probate, of which the following is a sufficient abstract:

"I give, devise, and bequeath to my wife my house and premises situated at the corner of Hester and Center streets, in the city of New York [being the premises in question], * * * to have, hold, use, occupy, and enjoy during the full end and term of her natural life; and after her death I give and devise the south part thereof, to wit, that part being south of the south stairway leading to the rooms which I now occupy, to my son William, to have and to hold the same, subject to the charge thereon hereinafter mentioned, for and during the full end and term of his natural life; and after his death I give and devise the same to his lawful issue, and to their heirs and assigns, forever; and the other part of the aforesaid house and premises, to wit, that part thereof lying to the north of the aforesaid stairway, I devise and bequeath to my son John, to have and to hold the same unto him, subject to the charge thereon hereinafter declared, for and during the full end and term of his natural life, and after his death I give and devise the same to his lawful issue, and to their heirs and assigns, forever. Upon the death of my said wife, I give and bequeath to my three daughters $600 each."

These legacies to the three daughters have been paid, and they constituted the charge subject to which the testator's sons took their interests in the property. Sarah Eakin, the widow of the testator, died April 5, 1856, whereupon the estates in remainder took effect.

John Eakin, to whom was given a life estate in the north half, died in 1852, before his mother, and without issue. For this contingency the will made no provision. Upon the widow's death, therefore, this part of the property passed by inheritance to the testator's children, William Eakin, who had the life estate in the south half, and Mrs. Mather and Mrs. Bard, each of whom thereby became seised of one undivided third of the north half. William Eakin died in 1879, intestate, and his share in the north half, to wit, one-third, and the fee of the south half, passed upon his death to his three children, John B. Eakin, Eugene Eakin, and Edwin Eakin. John B. Eakin died in 1879, Eugene died in 1881, and Edwin in 1882. The plaintiff, son of said John B. Eakin, was born in 1876. Upon the death of John B. Eakin his share, to wit, one-third of the south half and one-ninth of the north half, passed to the plaintiff by inheritance. At the time of their deaths, Eugene Eakin and Edwin Eakin were each seised as heir at law of their grandfather, the original testator, of one-ninth of the north half. They were also each seised, as devisees of their grandfather John Eakin, of one-third of the south half. Their wills were alike. Mutatis mutandis, they were as follows, taking Edwin Eakin's will as a specimen. He provided:

"I give and bequeath all my right, title, and interest in the property situated on the northeast corner of Center and Hester streets, in the city of New York, coming to me through the will of my grandfather John Eakin, to my brother Eugene Eakin during his lifetime; and at his death I order and direct that the said property shall be divided equally between my aunts Margaret Mather, now living in Providence, Rhode Island, and Sarah Jane Bard, now living in the town of Mt. Pleasant, Westchester county, New York, or to their heirs or assigns."

The question presented is whether these wills operated only upon that portion of the property which the testators respectively took under the will of their grandfather John Eakin by virtue of the limitation to the issue of their father, William, or whether they operated upon all the interests which the testators had respectively in the property in question. If each testator had used the words, "I give all the right, title, and interest in property which came to me through the will of my grandfather," there might be some good reason for limiting the operation of the will to the estate which the testator had by devise from his grandfather, and excluding the interest which he took as heir at law. But the words which he actually used bear a very different signification. They constitute a gift of "all my right, title, and interest in the property," and there is nothing to limit their operation to the right, title, and interest of the testator, however derived, except the words, "coming to me through the will of my grandfather John Eakin." Those words follow a description of the property, and apparently refer to it, and do not qualify the prior words, "all my right, title, and interest." To hold that they do qualify the words "right, title, and interest" would be to make the testators die intestate as to a portion of the interest which they had in that property, and such a construction will not be indulged in unless the words of the will plainly compel it. Vernon v. Vernon, 53 N. Y. 351, 361; Riker v. Cornwell, 113 N. Y. 115, 124, 20 N. E. 602; Lamb v. Lamb, 131 N. Y. 227, 30 N. E. 133; Schult v. Moll, 132

N. Y., at page 127, 30 N. E. 378; Thomas v. Snyder, 43 Hun, 14; Chadwick v. Wilson, 73 Hun, at page 488, 26 N. Y. Supp. 395; In re Stone, 15 Misc. Rep. 317, 37 N. Y. Supp. 583; Haight v. Pine, 3 App. Div. 434, 439, 39 N. Y. Supp. 511; 29 Am. & Eng. Enc. Law, 354. As was said in James v. Pruden, 14 Ohio St. 253, "It very seldom happens that a man, who goes to the trouble of making a will, intends to die intestate as to any part of the property that he may own at the time of his death." The language of the wills does not compel a construction which would make the testators die intestate as to any interest they had in the property. In this respect the manifest intention of the testators, discerned through the will, as applied to the subject-matter and the surrounding circumstances, must control. Schouler, Wills (2d Ed.) § 466. A clear gift or devise is not to be cut down by anything which does not with reasonable certainty indicate an intention to cut it down. 29 Am. & Eng. Enc. Law, 369. Words of general description are not to be limited by a subsequent attempt at a particular description. Schouler, Wills (2d Ed.) § 474. It must therefore be held that Eugene and Edwin devised the whole of the interest which they had in the property in question to their aunts, and the plaintiff is entitled to one-ninth only in the north half, and to one-third in the south half.

2. Having settled the interest or share of the plaintiff in the property, the next question is as to the right of the defendant to have compensation out of the mesne profits or the proceeds of the sale for the improvements and repairs which he has put upon the property. In an action of partition the equitable right of an improving tenant is recognized,—at all events, in cases in which the other tenants seek the partition. It rests on the motto that "he who seeks equity must do equity." This was decided in the case of Ford v. Knapp, 102 N. Y. 135, 6 N. E. 283, which was an action brought by a co-tenant out of actual occupation, asking the aid of a court of equity for partition, against a co-tenant who had made improvements on the property. The court said:

"The courts below have denied to the defendants any allowance, either for repairs or improvements. Practically, they held that the defendants were foolish, and the plaintiffs entitled to a dividend out of that folly, and so that the money of the former must go into the pockets of the latter. If this be true, the situation of the defendants was a hard one, though without their fault. They owned an undivided half of the property, and that certainly was no sin. * * * Those courts, almost, if not quite, without exception, have recognized the rule that a co-tenant asking their aid for a partition against an owner who has made improvements upon the property is entitled to relief only upon condition that any equities thereby arising shall be taken into account, and that in such case, where actual partition is made, and it is possible so to do, the improving tenant will be awarded the portion of the land upon which the improvements have been made. This relief is administered, not upon the ground that the improving tenant, who acts without the agreement or assent of the other owners, gains a lien upon the property for his advances, but stands upon the proposition that one who seeks equity must do equity, and that the tenant out of the actual occupation who asks a court of equity to award him partition is entitled to relief only upon condition that the equitable rights of his co-tenants shall be respected."

See, also, Cosgriff v. Foss, 152 N. Y. 104, 46 N. E. 307, 36 L. R. A. 753; McGillis v. McGillis, 154 N. Y., at page 548, 49 N. E. 150.

"Courts of equity have not confined the doctrine of compensation or liens for repairs or improvements to cases of agreement or of joint purchases. They have extended it to other cases where the party making the repairs and improvements has acted bona fide and innocently, and there has been a substantial benefit conferred upon the owner, so that, ex æqua et bona, he ought to pay for such benefits." 2 Story, Eq. § 1237. In Ford v. Knapp, supra, it was further held that, in case the property should be sold in partition, upon a division of the proceeds the equitable rights of the improving tenant should be recognized, and an accounting had. See, also, Town v. Needham, 3 Paige, 545; Jones v. Duerk, 25 App. Div. 551, 49 N. Y. Supp. 987. The plaintiff concedes that the defendant about the year 1894 made, in good faith, certain valuable improvements on the property, by way of alterations and repairs to the buildings thereon, for which some compensation ought, on equitable principles, to be made, but claims that the defendant having been in the possession of the premises since 1890, and received the rents and profits thereof up to this time, such improvements should be offset only against the rents and profits; in other words, that the plaintiff with a vested interest in the property should not, in whole or in part, be "improved out of the premises." In Clapp v. Nichols, 31 App. Div. 531, at page 533, 52 N. Y. Supp. 129, the court said:

"But the claim of the appellant is too broad. In doing justice to her, care must be taken not to improve her co-tenants out of their rightful share of the property. So, also, she must be charged with the fair and reasonable value of her exclusive use and occupation of the portion which belonged to the other owners. The value of the land without the improvements should be ascertained, and the value of the improvements. The value of the appellant's use and occupation should also be determined. If this exceeds the value of her improvements, the appellant will be entitled to nothing by reason thereof. If it is less, it should be deducted from the amount representing the improvements, and the balance should be declared a first lien on the proceeds of the sale, except that such lien should not be effective to reduce her co-tenants' share in the proceeds to a smaller sum than the ascertained value of their interest in the land exclusive of the improvements. In other words, each of the defendant's co-tenants must receive the full value of his land, as though the defendant had never occupied it at all, and he must also receive the fair rental value thereof, reckoned for the period of her occupancy. If, after these payments have been made, the proceeds of the sale exceed the value of the defendant's one-sixth of the premises, the excess will undoubtedly be due to the existence of the improvements, and it is only equitable, in view of the peculiar facts attending the development of the property held under this defective title, that such excess should go to the party by whom the improvements were made. This disposition of the equities of the case restores to the other tenants all their rights, and leaves them unharmed by anything which the defendant has done, while at the same time it prevents them from making any profit of her innocent mistake."

Before rendering judgment a reference will be directed to hear and determine: First, the value of the premises irrespective of the improvements and repairs made by the defendant; second, the value of such improvements and repairs; third, the value of the use and occupation of the premises by the defendant, and the amount of the rents and profits received by him. And the referee will take and state an account between the parties on the basis of this decision for

the information of the court; the form of the interlocutory judgment
and the question of costs to be determined on the coming in of the
referee's report.