---

(140 App. Div. 388.)

### In re HENDRICKSON.

(Supreme Court, Appellate Division, First Department. Nov. 4, 1910.)

1. WILLS (§ 481*)—CONSTRUCTION—TIME OF TAKING EFFECT.
   A will speaks as of the time of testator's death.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1005–1007; Dec. Dig. § 481.*]

2. WILLS (§ 441*)—CONSTRUCTION—INTENTION OF TESTATOR.
   The conditions existing at the time of the execution of the will may be resorted to, to ascertain the real intention of testator.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 958; Dec. Dig. § 441.*]

3. WILLS (§ 566*)—CONSTRUCTION—RIGHT ACQUIRED—"MONEY."
   The word "money" in a will, whereby a wife gave to her husband certain personalty, "money, securities for money, evidences of debt, and of title and accounts," etc., does not include the amount received by the wife under a will executed about nine years after the will of the wife, who died before the amount of her share in testatrix's estate was ascertained, so that the right of the executor of the wife at the time of her death was merely a chose in action; the word "money" covering only cash or money on deposit, unless the context gives it a more extended meaning.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1238½, 1239; Dec. Dig. § 566.*
   For other definitions, see Words and Phrases, vol. 5, pp. 4554–4565.]

Appeal from Surrogate's Court, New York County.

Proceedings for the settlement of the account of Emilia B. Hendrickson, as executrix of Caroline Studley, deceased. From a decree settling the account, the New York Trust Company appeals. Reversed and remitted to the Surrogate's Court for further action.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Charles F. Howland, for appellant.

Frank Moss (Isidor Wels, on the brief), for respondent.

DOWLING, J. On December 10, 1898, Caroline Studley executed her last will and testament, whereof so much as is relevant to the present appeal is as follows:

"I, Caroline Studley, wife of Theodore Earle Studley of the city, county, and state of New York, do hereby revoke all former wills by me made, and declare this to be my last will and testament.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"(1) It is my will that all my just debts and the charges of my funeral be paid out of my personal estate as soon as it can conveniently be done after my decease.

"(2) I give and bequeath to my daughter, Mabel Studley all my jewels, jewelry, trinkets and personal ornaments of every description, and all my clothing, but in the event of her predeceasing me, I give the same to my sister Emilia B. Hendrickson, if she survives me, and in the event of my said daughter and said sister both predeceasing me, I give the same to my said husband Theodore Earle Studley.

"(3) I give and bequeath to my said husband Theodore Earle Studley all the household furniture, books, works of art, plate, silverware and other chattels and effects, except such as are bequeathed in the Second Article of this my will, and money, securities for money, evidences of debt and of title and accounts, vouchers, and manuscripts, which shall belong to me or be in the house where we shall reside at the time of my decease, but if he predeceases me, then I give, devise and bequeath the same to my said daughter.

"(4) I hereby give and bequeath to the Greenwood Cemetery the sum of four hundred dollars on condition that the same, or the interest which the cemetery may from time to time allow on the same, or any unexpended part thereof, shall be applied by said cemetery to the preservation of any enclosure, monument or other structure on lot No. 14,065 in section 159 in said cemetery, or in the cultivation or keeping in order of any grass or shrubbery on or pertaining to said lot. And the said Greenwood Cemetery shall not be required, so as aforesaid to allow, pay or apply in any year, or be in any way responsible for, a higher rate of interest on said sum, than the lowest rate it may receive, in such year, from any of its investments or securities, sanctioned by law for the investment of trust funds.

"(5) I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of every description whatsoever, and wheresoever situated, to the Continental Trust Company of the City of New York, to have and to hold the same, to it, and to its successors and assigns forever, in trust, nevertheless, to recover, receive, hold, invest and reinvest the same, and to collect and receive the rents, interest and income therefrom, and in the event of my said husband, Theodore Earle Studley, surviving me, to pay the net income therefrom, from the time of my death, to him, during his natural life, and thereafter, in the event of my daughter Mabel Studley's surviving me and my husband, to pay such net income to my said daughter, during her natural life, and in the event of the death of my said husband before my death, and of my daughter surviving me, to pay such net income from the time of my death, to my said daughter, during her natural life."

Then follow directions as to the disposition to be made of the trust estate upon the death of both her husband and daughter.

The New York Trust Company is the same corporation as the Continental Trust Company, named in the will. On November 12, 1907, Cornelia H. Moore executed her last will and testament, whereby she devised and bequeathed all the rest and remainder of her estate, after the payment of her just debts and funeral expenses, in equal shares, to five persons named, of whom Mrs. Studley was one. She died before the death of Mrs. Studley, which latter occurred on December 18, 1907. Theodore Earle Studley died April 30, 1908, leaving a will whereof his daughter, Mabel Studley Fielding, was executrix. From the Moore estate the Studley estate has received sums of money between September 5, 1908, and February 14, 1910, aggregating $29,-665.57, being in satisfaction and payment of said one-fifth share in the Moore estate devised and bequeathed to Mrs. Studley; the accounts of the executor of the Moore estate having been judicially settled February, 3, 1910.

The question now to be determined is whether the sums so received from the Moore estate are to be deemed as "money" and are to be adjudged as having been included in the specific bequests to Theodore Earle Studley, under the third clause of the will (which is the interpretation placed upon the will by all heretofore having had to act under its provisions), or whether they are to be deemed outside the scope of the language used in that clause in specifying the classes of personal property bequeathed to Theodore Earle Studley, and therefore falling into the residuary estate under the fifth clause of the will.

It is to be noted at the outset that the classes of property bequeathed to her husband are enumerated with great particularity by the testatrix, and the language used shows that she had in mind exactly what kinds of personalty she desired both her daughter and her husband to have. So apt and appropriate are the terms used that there is no other designation save that of "money" under which this unexpected legacy from the Moore estate can be claimed to fall. And while it is true that the will of the testatrix speaks of the time of her death, it is also true that the conditions which exist at the time of the execution of the will can be resorted to, in order to ascertain what her real intentions were. In this case there can be no claim that, when she executed her will, testatrix could have foreseen that nearly nine years thereafter she would be the beneficiary under a will of a relative. Nor does the fact that the payments of her share in the Moore estate were in money determine the question, for all property is ultimately deducible to a value expressed in currency; but that would not make all property money. What was left to Mrs. Studley under the Moore will was not a specific bequest of a certain sum, but a gift of a share which was not ready for distribution at the time of Mrs. Studley's death, whose amount could not then be determined, and which could only be ascertained after an accounting by the executor of the Moore estate, which the executor of the Studley estate would have a right to demand. At the time of Mrs. Studley's death it was merely a chose in action.

The definition of what constitutes "money" was laid down in this state by Chancellor Kent in Mann v. Mann, 1 Johns. Ch. 231, affirmed 14 Johns. 1, 7 Am. Dec. 416. He held as follows:

"I do not perceive, from the perusal of the will, any reason for construing the word 'moneys' beyond its popular and legal meaning. It means gold and silver, or the lawful circulating medium of the country. Coke Litt. 207a. It may be extended to bank notes, where they are known and approved of and used in the market, as cash. Perhaps it would be proper to extend the term to money deposited in bank, for that is cash, and considered and used as cash placed there for safe-keeping, in preference to the chest of the owner. * * * Beyond these bounds the word cannot be extended, unless it is accompanied with explanations showing that the testator alluded to other property than his cash, and defining that property as money at interest, on bond and mortgage, or money in the public funds. If he uses the word absolutely, without any such accompanying qualification or reference, it cannot be construed beyond its usual and legal signification, without destroying all certainty and precision in language, and involving the meaning of the will in great uncertainty. * * *

"It appears to me that it would contravene the rules of law, and the policy of the statute, and be of dangerous consequence, to depart from the common and fixed meaning of the word 'moneys,' and which meaning the testator must be presumed to have understood; especially as the bequest will still be effec-

tual and productive. * * * There is a settled distinction, on this subject, of the construction of wills, between cash and money, and choses in action, and this increases the difficulty of the attempt which has been made to confound them."

In Beck v. McGillis, 9 Barb. (N. Y.) 35, it was said:

"By the bequest of the moneys of which the testator should die possessed, to Mrs. McGillis, she became entitled to the cash, using the term in its popular sense, which at the time of his death the testator had in his possession or deposited in bank, and to nothing else. The Kirk bond and mortgage, the Smith bond and mortgage, the rent due from Toole, and the insurance money due upon the Market street buildings, were all debts due to the testator at the time of his death and are undisposed of by the will."

The result of an examination of the authorities here and abroad is to confirm the view that the term "money" covers only cash, or money on deposit, unless the context of the will or the circumstances existing at the time the will was made give a more extended meaning. The exceptions to this rule are thus stated in Jarman on Wills (Bigelow's 5th Ed.) 769:

"In several instances the word 'money' (which is often popularly used in a vague and inaccurate sense, as synonymous with property) has received this construction. The result has generally been due either, first, to the testator having directed his funeral expenses, debts, or legacies which ordinarily constitute a charge on the general residue to be paid out of the 'money'; or, secondly, where he has shown a clear intention to make a complete disposition of all his personalty, and that intention can only be effected by adopting the enlarged interpretation of the word 'money.' For it is clear that, if the word be used without any explanatory context, it will be construed in its strict sense."

Among the cases where the context indicated a broader construction to be given to the word was Smith v. Burch, 92 N. Y. 228, where the rule was laid down that standing alone "money" meant only that which passes current as money, including bank deposits; but it was held that, under a bequest to her husband of "all the ready money I may have in bank or elsewhere at my decease," there was included a legacy due her from an estate which the husband had collected prior to her decease and which was actually spent by him with his own money in defraying household expenses; she then being of unsound mind. The court put its decision on the ground that money in the hands of a depository, under these circumstances, was equivalent to money in bank; but even here the court said it did not consider the case free from doubt. So again in Sweet v. Burnett, 65 Hun, 159, 20 N. Y. Supp. 24, affirmed 136 N. Y. 204, the testatrix left certain legacies "from the money of my husband's estate now belonging to me," and, the court held that this included all the proceeds of the estate of her husband which she was yet to receive. But in that case the husband had died 10 months prior to her decease, leaving her all his property.

Among the cases where the word "money" was extended because of circumstances existing dehors the will itself at the time of its execution was Matter of Blackstone, 47 Misc. Rep. 538, 95 N. Y. Supp. 977, where a holographic will containing a gift of "all money that remains after all debts are paid," with no residuary clause, and where the estate did not include sufficient money to pay the debts and legacies,

was construed so as to allow the term "money" to include all the personalty, in order to furnish a fund from which testator's directions could be fulfilled. So also in Matter of Stone, 15 Misc. Rep. 317, 37 N. Y. Supp. 583, where a testatrix provided for certain legacies, and, "should there be money in the bank to my credit after the preceding sums have been paid, I give and bequeath the same to the board of ministerial relief of the United Presbyterian Church of North America." Her estate at the time of making the will and at her death consisted almost entirely of securities lodged with the bank, and there was not enough "money," strictly applied, to meet the legacies. The term was therefore, under these peculiar circumstances, extended to include those securities.

But none of the exceptions to the general interpretation of the term "money" exists in this case. The testatrix was careful in the choice of the terms she used to designate the various classes of property which she gave to her husband and daughter. Her will contained a general residuary clause both of realty and personalty into which no personalty would fall if the term "money" is to be extended as is contended for by the respondent. There is nothing in the context to indicate that testatrix intended any extension of the usual meaning of the word. The wording of the residuary clause is a clear intimation to the contrary. There were no circumstances existing dehors the will at the time of its making which called for any extension of the meaning, for the fund in question was not in existence, nor could its future existence have been expected or foretold. It follows therefore that the sums received from the Moore estate, being the proceeds of what was at the time of Mrs. Studley's death a mere chose in action, do not come within the scope of the term "money" as used in the third clause of her will, and therefore became and are a part of the residuary estate under the fifth clause thereof.

This appeal is taken from the order and decree of the Surrogate's Court judicially settling the accounts of the executrix of the Studley estate, whereby the payments from the Moore estate were treated as passing to Theodore Earle Studley's estate under the third clause of Mrs. Studley's will, and the accounts were settled on that basis.

Having reached the conclusions above indicated, the order and decree appealed from must be reversed, and the proceeding remitted to the Surrogate's Court for further action in accordance herewith, with costs to both parties to this appeal payable out of the estate. All concur.