LYONS v. LYONS.

(District Court, N. D. West Virginia. July 29, 1915.)

1. WILLS ☞566—CONSTRUCTION—PROPERTY DEVISED—"MONEY IN BANK."

A testator devised real estate appraised at a specified value to a nephew, bequeathed to his wife all his shares of capital stock of a bank amounting to 20 shares, made small cash bequests, gave to a brother the residue "of my money in bank" remaining after payment of debts, expenses of administration, and legacies, and gave his residuary estate to his wife. Testator was, at the time of the making of the will, past 60 years of age and childless, and had retired from business. Testator and his wife had talked over the matter of the disposition of his estate, and had agreed thereon when he sent for a lawyer who drew the will according to instructions. *Held*, that the term "money in bank" in the will included, not only a checking account, but also time and savings deposits of testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1238½, 1239; Dec. Dig. ☞566.]

2. WILLS ☞439—CONSTRUCTION—INTENTION OF TESTATOR.

The court in construing a will must ascertain the intention of testator which, when ascertained, governs.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. ☞439.]

3. WILLS ☞765—CONSTRUCTION—RIGHTS OF BENEFICIARIES.

Testator gave his money in bank to a brother, and gave to his wife all his stock in a bank "amounting in all to twenty shares." He also gave her his residuary estate. Testator at the time of his death owned but 12 shares of stock, and it did not appear whether he was mistaken as to the amount of his holdings at the time he made his will, or whether he subsequently disposed of the 8 shares. When testator and his wife and the lawyer who drew the will talked over the disposition to be made, it was understood that the wife was to have 20 shares of bank stock as her portion. *Held*, that the wife was entitled to 20 shares of stock, or their equivalent in value.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1979; Dec. Dig. ☞765.]

In Equity. Suit by Michael Lyons against Mary E. Lyons, administratrix, and in her own name. Decree ordered.

Walter F. Carter and Davis, Swartz & Templeman, all of Clarksburg, W. Va., for complainant.

Smith & Jackson, of Clarksburg, W. Va., for defendant.

DAYTON, District Judge. John Lyons, born in Ireland, came to America about the year 1864. He settled in Clarksburg and married Mary E. Shiel. He was a miner, suffered an accident in the mines, whereby he lost a leg, went into the saloon business, and died at the age of 64, testate, at Clarksburg, December 31, 1910, leaving an estate, real and personal, of the value of something like $16,000. His widow survived him and qualified as his administratrix cum testamento annexo. He had no children. Two brothers survived him, Patrick F. Lyons, resident in Pennsylvania, and Michael Lyons who had remained and lived his life in Ireland and for 40 years had been superintendent of the estate of Capt. A. B. Pollock known as "Ganaveen" in County Galway. This last-named brother had 10 children living one of whom, Thomas Roger Lyons, had come to America, settled in Clarksburg, en-

gaged in the grocery business, and married the niece by blood of testator's wife. The personal estate that passed into the hands of Mary E. Lyons, the widow and administratrix, as shown by the appraisement, included a cash deposit, subject to check, in the Home Bank of Savings of $854.14; three certificates of time deposits, interest-bearing, with this same bank, aggregating in value, principal, and accrued interest $2,799.58; a similar time certificate with the West Virginia Bank of the value of $1,236.86; a like time certificate of deposit with the Union National Bank of the value of $865.94; and a time savings deposit with the Lowndes Savings Bank & Trust Company of $3,866.-45. All of these sums have been collected by the administratrix from these banks. Decedent, Lyons, also owned 12 shares of the capital stock of this Home Bank of Savings. His will was executed on February 26, 1907, nearly 4 years before his death. It was prepared for him by Attorney Johnson, upon information and directions given him, as he testifies, by decedent and his wife, or, at least, by decedent in the presence and with knowledge of his wife. By its terms he provided (clauses 1 and 2) for payment of burial and funeral expenses and his debts "out of my money in bank"; devised (clause 3) to his nephew (who had married his wife's niece) Thomas Rogers Lyons his house and lot on Oak and Pike street in Clarksburg (appraised at a value of $5,000); by clause 4 he bequeathed to his wife "all my shares, of the capital stock of the Home Bank for Savings of Clarksburg, West Virginia, amounting in all to twenty (20) shares"; and by clauses 5, 6, and 7, he made certain small cash bequests, aggregating $201, which are not in controversy here, and are therefore immaterial. Clauses 8 and 9 of this will read as follows:

"8. I give and bequeath to my brother, Michael Lyons of Ganaveen, Ireland, the residue of my money in bank, remaining after the payment of my aforesaid funeral expenses, debts, costs and expenses of administration of my estate, and the legacies aforesaid, and in the event that said Michael Lyons shall have died heretofore or shall die before my death leaving children living at my death, then I give and bequeath said money, in this present paragraph bequeathed to said Michael Lyons, to said children of Michael Lyons then living in equal shares per capita, it being my intention that the issue of any deceased child of said Michael Lyons shall not represent such deceased child.

"9. All the rest and residue of my property and estate, real, personal and mixed, of every kind or nature whatsoever, not hereinbefore given, devised and bequeathed, I do hereby give, devise and bequeath to my wife, Mary E. Lyons."

[1] The whole controversy here turns upon what construction is to be given to the words: "my money in bank." The complainant, Michael Lyons, insists it includes the cash checking deposit of $854.14 with the Home Bank of Savings, the five time certificates of deposits with the Home, Union National, and the West Virginia banks, and the time savings deposit with the Lowndes Savings Bank & Trust Company. On the other hand, it is insisted by the defendant widow that these words, "money in bank," must be restricted to the cash-checking deposit of $854.14, that the time certificates of deposit must be held to be, in effect, loans made by the testator to these banks, payable in futuro for the consideration of an agreed rate of interest, and that all interest in them vested in her under the residuary ninth clause of the

will, and that the cash-checking deposit, being subject to payment of administration costs and legacies, has been more than consumed in the payment of these, wherefore plaintiff is entitled to take nothing. Counsel for the widow, to sustain this contention on her part, have filed with me an able and exhaustive brief, wherein they cite many text-books and decided cases to the effect that these time deposits and savings accounts are choses in action, and not "money in bank." They rely especially upon the state statute (section 946 [chapter 29, § 62] Code 1906), wherein, in relation to the subject of taxation, "money" is defined.

Webster and Century Dictionaries, Burrill's Law Dict., 3 Minor's Ins. 27, 28, 2 Words and Phrases, 1144, 2 Daniel on Negotiable Instruments, §§ 1702, 1703, 1705, Zane on Banks and Banking, §§ 161, 362, Page on Wills, § 496, p. 583, and Gardner on Wills, § 112, c. 14, p. 414—are cited, Mr. Justice Matthews in Basket v. Hassell, 107 U. S. 602, 2 Sup. Ct. 415, 27 L. Ed. 500, says:

"A certificate of deposit is a subsisting chose in action and represents the fund it describes, as in cases of notes, bonds, and other securities, so that a delivery of it, as a gift, constitutes an equitable assignment of the money for which it calls."

This case involved the question as to what constituted a donatio mortis causa, and was decided in 1883. The cases of Commonwealth v. Compton, 137 Pa. 138, 20 Atl. 417, 418; State v. Patch, 21 Mont. 534, 55 Pac. 108; City of Lansing v. Wood, 57 Mich. 201, 23 N. W. 769; Dabney v. Cottrill, 9 Grat. (Va.) 572, 579; Dillard v. Dillard, 97 Va. 434, 34 S. E. 60; Beatty v. Lalor, 15 N. J. Eq. 108; Hancock v. Lyon, 67 N. H. 216, 29 Atl. 638; Commonwealth v. Howe, 132 Mass. 250; State v. Hill, 47 Neb. 456, 66 N. W. 541—are cited and relied on as fully establishing this construction contended for.

On the other hand it is very earnestly contended that:

First. The authorities cited by defendant's counsel define the technical meaning of money and certificates of time and savings deposits, while "money" is also a generic term, and may mean, not only coin and currency, but any instrument or token representing value, citing State v. McFetridge, 84 Wis. 473, 54 N. W. 1, 998, 20 L. R. A. 223; In re Levy's Estate, 161 Pa. 189, 20 Atl. 1068; In re Miller's Estate, 48 Cal. 165, 22 Am. Rep. 422; Fry v. Feamster, 36 W. Va. 454, 15 S. E. 253.

Second. That the obligation upon this court is not to define the technical meaning of "money in bank," but to ascertain in what sense and to accomplish what purpose testator used these words in his will; that such intention must be controlling over any and all technical meanings of the words used, and such intention is to be ascertained by allowing for the unskillfulness and negligence of the testator, disregarding technical informalities, by tracing this intention diligently in every part of the instrument and in the whole of it taken together, aided by extrinsic evidence of the state of facts and surrounding circumstances under which the will was made, such as testator's situation at the time, the state of his family, the condition of his property, and generally any facts, known to him, which may reasonably be supposed to have in-

fluenced him in its disposition, all to the end that the court may place itself in his situation and better interpret his language and meaning, as set forth in Wootton v. Redd's Ex'r, 12 Grat. (Va.) 205, and authorities there cited.

In opposition to the contention that time and saving deposit certificates are not to be held money in bank, but choses in action negotiable in character, counsel for plaintiff cite: In the Matter of Stone, 15 Misc. Rep. 317, 37 N. Y. Supp. 583; Boyd v. Satterwhite, 12 Rich. Eq. (S. C.) 487; In the Matter of Blackstone, 47 Misc. Rep. 538, 95 N. Y. Supp. 977; In the Matter of Hendrickson, 140 App. Div. 393, 125 N. Y. Supp. 309; In re Caldwell's Estate, 8 Del. Ch. 358, 68 Atl. 525; Vaisey v. Reynolds, 6 L. J. Ch. (O. S.) 172; Jenkins v. Fowler, 63 N. H. 244; Leaphart v. Bank, 45 S. C. 563, 23 S. E. 939, 33 L. R. A. 700, 55 Am. St. Rep. 800; State v. Shove, 96 Wis. 1, 70 N. W. 312, 37 L. R. A. 142, 65 Am. St. Rep. 17; Shute v. Pacific National Bank, 136 Mass. 487; Lebanon v. Mangan, 28 Pa. 452; Loudon Savings Fund Society v. Hagerstown, etc., Bank, 36 Pa. 498, 78 Am. Dec. 390; Patterson v. Poindexter, 6 Watts & S. (Pa.) 227, 40 Am. Dec. 554; Hotchkiss v. Mosher, 48 N. Y. 482; In the Matter of Hewitt, 181 N. Y. 547, 74 N. E. 1118; Magee on Banks and Banking, § 152, 3 R. C. L. § 198; and the case of Dabney v. Cottrell, 9 Grat. (Va.) 572, is especially relied upon as a case in point, decided by the Supreme Court of Virginia before the division of the state, and therefore binding authority upon the lower West Virginia courts until reversed. Most of the authorities thus cited pro and con, I have examined; and, without entering into a discussion of them in detail, it is sufficient for me to state that, while recognizing the apparent and to some extent real conflict that exists between them, my study of them leads me to the conclusion that, so far as this case is concerned, the plaintiff's contentions must be sustained and this for these reasons:

First. I am convinced that the technical definition of "money in bank," which excludes time and savings deposits and is held to apply only to checking accounts, is contrary to all common understanding. I believe that a vast majority of bank depositors, if asked the question whether "money in bank" included such certificates, would at once answer, "Yes." The very nature of these deposits in most instances precludes the idea of their being considered loans. In this day of intense competition among banks to secure deposits, some are paying interest upon daily balances disclosed in checking accounts, very many upon time deposits for periods from 1 to 12 months, and almost all such do so with a well-defined understanding that the depositor may, at any time, withdraw without notice or forfeiture even of interest, unless the withdrawal be made within 30 days after the deposit is made. Under such conditions technical constructions of words by the courts should yield to common use and understanding of such words. Many thousands of dollars are constantly deposited in banks because the depositors expect to call for and use the money for specifically planned purposes within too short a time to warrant them to make a loan thereof to individuals or other corporations. The farmer, for instance, sells his cattle in the spring and summer, receives his pay therefor, but out

of it, in from 1 to 4 months, he expects to pay f,or his fall and winter stock to feed over for sale the following year. If he can deposit his money in a bank and get a small rate of interest for it for the intervening time, he does so as a matter of good business, but with no thought that he has "loaned" the money to the bank. The banks, whether it be good business or not on their part, have very generally yielded to the insistent demand upon them, in this section of country at least, to receive such deposits upon such conditions. In the language of Judge Allen in Dabney v. Cottrell, 9 Grat. (Va.) 572:

"In the ordinary transactions of life we know that such deposits are not regarded as investments in the common acceptation of the term. The depositor consents to accept of a low rate of interest, because. he regards it as a fund upon which he can always rely"

—to draw. upon, and in this section even without giving the short notice to which Judge Allen refers. In my judgment the author of Magee on Banks and Banking, at page 370, is entirely justified in saying:

"A depositor never treats the transaction as a loan to the bank. He does not understand the certificate to be a promissory note, and the bank issuing the instrument does not regard it as such. A bank usually, in borrowing money, does so by resolution, duly passed by the board of directors, authorizing the same to be made, and a promissory note in form is issued."

And the writer in 3 R. C. L., in section 198, in saying:

"While money for which a certificate of deposit is given by a bank is, in legal effect, in the nature of a loan, yet it is not a loan in the ordinary sense of the term, but a real deposit, within the meaning of those statutes which prohibit an insolvent bank from receiving deposits."

[2] Second. I agree with counsel for complainant that the real question involved here is not the ascertainment of the technical definition to be applied to the words "money in bank," but the determination of the intent of the testator in his use of them in this will, and that such intent, if ascertainable, must govern. All the surroundings of this man at the time he made this will seem to me to indicate the scheme and purpose of it to be that contended for by complainant. He was past 60 years of age, childless, a cripple, and because of physical infirmity had retired from active business; the age of his wife is not disclosed but it is fair to presume it was near his own, for they had lived together many years in the marital relation; they had talked the matter over, and I think had substantially agreed upon the disposition of the property, as indicated by the undisputed fact that he sent for the lawyer, with whom they had, so far as disclosed, little or no intimate acquaintance, and in each others presence this lawyer was instructed as to how and to whom the property was to go. One of the two letters filed, written by testator to complainant, under date of December 5, 1907, is written upon a business letter head of T. R. Lyons, and this letter head indicates that the latter was conducting a grocery business at the "corner of Pike and Oak streets," the same description given in the will for the house and lot owned by decedent. This T. R. Lyons is the son of complainant and the nephew by blood of testator and also, by marriage, of his wife. He speaks of this nephew in this letter in a way indicating both interest and confidence in him. Very naturally, when making

his will, he decides to provide for this nephew, and he devises to him this house and lot, appraised at a value of $5,000. This letter discloses another thing; that, so far as his brother Patrick is concerned, he regards him so situated in Pennsylvania as bookkeeper for a large and well-known manufacturing company, receiving a salary of $75 per month, as to make him able to send to complainant "a nice Christmas present," as he, testator, had been doing for years agone, and was then doing in the way of a £5 note. This brother Patrick, in the will is remembered with the bequest of $1. For provision for his wife he turns, not to his "money in bank," but to his bank stock, of which he conceived himself to own 20 shares. The significance of this distinct and positive discrimination between his bank stock and his money in bank cannot be either overlooked or discounted. Many illiterate people would hardly draw such distinction; to them, money invested in bank stock would be nothing more than money in the bank. The value of these shares of bank stock is unfortunately not disclosed, but it may be assumed by me, from general knowledge of the bank's reputation and financial standing, that its shares were worth at least par, and were of the par value of $100 each. If this be true, testator was providing his wife with this presumably dividend-paying stock of the value of $2,000. Whether this and his property other than his house and lot and money in bank given to her by the residuary clause were sufficient for her needs and requirements for the remainder of her life is not the question; that he thought so I have no doubt. It is not to be forgotten that he had six different certificates of time and savings deposit in four different banks. If he had not deemed the bank stock sufficient for her, what more easy for him than to have directed payment to her of one or more of these certificates in addition? Why should he specifically bequeath to her the bank stock, stating the exact number of shares of it, if he designed the bulk of his estate, including the bank time certificates, to pass by the general residuary bequest to her? But it is said he had $854.14 of money in bank subject to instant withdrawal by check, and this alone is what should be held to have been his purpose to give to his brother Michael under the eighth clause. If so, such provision was nothing more than a hollow pretense, for he charged it with $201 of specific legacies, with his funeral expenses, debts, and costs of administration that would, and necessarily did, exceed by several hundred dollars the whole amount of this checking deposit. It therefore seems to me inevitable that by the use of the words "money in bank" he included all these deposits, both checking, time and savings ones, and that he carried out the inclination, natural to childless men, of seeing to it that his property should go, after a reasonable provision for his wife, to those of his own blood rather than through her to strangers. With this view before him, it was very natural that he should remember first the favorite nephew associated with him in daily life, should pass over his brother Patrick who, so far as the record discloses, had no family and was prosperous enough to take care of himself, and turn to his other brother, older than himself, who had remained in the old home in Ireland, cared for and buried the parents of both, who had a large family of 10 living

children, and whose financial condition was such that he had beforetime felt it incumbent upon him to aid by money contributions.

[3] Perhaps I should stop here, and it may be a doubtful proposition that I feel in conscience bound to interpose in conclusion. The bequest to the wife was of all his bank stock, amounting to 20 shares. It turns out he had but 12. Whether he was mistaken as to his holdings of stock at the time he made this will, or whether he subsequently sold or disposed of 8 shares of it, I know not; however, the conviction is strong in my mind that when he and his wife and the lawyer who drew the will talked it over, there was no question but what his wife was to have 20 shares of the capital stock of this bank as her portion, and I think she ought to have it, or its equivalent in value. I also do not think, under all the circumstances, she should be, in this purely family settlement, where no rights of creditors or legatees are involved, chargeable with interest upon the funds in her hands as administratrix, save and except from the present date of the decree to be entered herein, nor should she be charged with costs of suit.