In the matter of the estate of Martha A. Blackstone. Proceeding for judicial settlement. Decree rendered.

L. M. Martin, for executors.

C. Lansing Jones, for Harriet E. Blackstone.

William Townsend, for James L. Blackstone.

CALDER, S.   Martha A. Blackstone died in the town of Kirkland, Oneida county, N. Y., on the 22d day of October, 1903, leaving a will dated November 3, 1900, and a codicil December 9, 1902, by which she bequeathed certain specific articles to friends and relatives, $400 to Clinton Cemetery Association, $50 to Edward J. Blackstone, and the family pictures and $100 to her brother James L. Blackstone. The fourth clause of said will, and the important one to be considered here, reads as follows:

> "I give and bequeath, after all debts are paid, to Harriet E. Blackstone, of Galesburg, my watch, silver spoons, forks, tea set, ice pitcher, china tea set, clothing, all fancy baskets and all they contain, all money that remains after all debts are paid, to her."

Her will and codicil were holographic. Her estate consisted of a house and lot in Clinton, N. Y., of the value of $1,500, and personal property $4,836. Upon the date of the execution of her will she possessed $400 in money, at the date of her codicil $588, and at the time of her death $327. After payment of debts, legacies, and expenses, the

net personal estate amounted to $3,839, composed of household furni-- ture, mortgages, railroad stocks, and bonds. Said furniture, however, is not the subject of dispute here, as that was disposed of by consent of the respective parties. The real estate was not devised and descended by operation of statute to her brother.

The legatee Harriet E. Blackstone, a cousin of decedent, claims that by virtue of the phrase contained in said fourth clause, "all money that remains after all debts are paid, to her," she is entitled to said net personal property; while the brother of decedent insists that she died intestate as to the same, and that it should be distributed and the securities delivered to him as her sole next of kin. Considerable discussion has been had by the courts as to what the term "money," or the phrase "what remains of my money," included when used in a testamentary instrument. They have been the subject of much litigation. Each case depends to some extent upon the conditions and circumstances surrounding the testator and his estate. Some courts upon the entire context of the will have excluded all property except that which we understand as money in its ordinary sense, while others have held it to include stocks, bonds, and other securities. There is no rigid rule in the construction of wills by which words or phrases can be interpreted in only one sense. Certain expressions, taken with other clauses, may be construed differently from like words when used under different circumstances or conditions in other testamentary documents. The cases may not always be reconcilable, yet they all agree that, if the intent of the testator to include all personal property be gathered from the will, the word "money," or the phrase "what remains of money," must be used in its enlarged sense, and not in its narrow one. It may be profitable and instructive to examine a few of the cases upon this subject.

In Waite v. Combes, 5 De G. & S. 676, the testator directed his executors "to take and receive all moneys" that might be in his possession or due to him at the time of his decease and invest it for the benefit of his wife, and it was held that this was equivalent to a gift of the general personal estate, and it was decided upon the theory that, wherever legacies are given payable out of the estate, the gift of the residue of the money would include all of the personal estate. Where a testator said (Cowling v. Cowling, 26 Beav. 449): "I bequeath unto my beloved wife my goods and furniture, * * * my plate and linen, all moneys and notes that may be due to me at my decease"— it was held that stock was not included in the bequest, as from the context the testator intended to give only those three enumerations of property which he had specified. In Nevinson v. Lady Lennard, 34 Beav. 487, where the clause under consideration was: "When all my just debts and legacies are paid, * * * I give the residue of all my money, either in my banker's hands or elsewhere, if any such cash be remaining, in trust" (then specifying the nature of the trust)—it was held that the word "money," coupled with the word "cash," should be confined to money strictly and properly so called, but that if it be given after a direction to pay debts, legacies, funeral and testamentary expenses, or with any other words which denote an intention on the part of the testator to dispose of the whole of his estate, it will be construed

as synonymous with the word "property." In Prichard v. Prichard, L. R. 11 Eq. 232, where a testator directed that the income arising from "my principal money shall be paid to my wife, while unmarried, for the support of herself and the education of my children," it was held that the whole of the personal property passed under said clause. The case of Dowson v. Gaskoin, 2 Keen, 14, was in some respects quite similar to the one under consideration. There a testator gave legacies and specific articles to relatives, made certain directions as to her burial, appointed her executors, and then stated: "Whatever remains of money, I bequeath to Edward Dowson's five children, to be equally divided." In construing this phrase, the court held that there was included in it so much of the stocks and moneys as remained after payment of the debts and legacies of the testatrix. Attention is also called to the similarity of the clause in Rogers v. Thomas, 2 Keen, 8, to the one in the will in question. There the testatrix, after giving various legacies of sums of money, bequeathed "all which may remain of my money after my lawful debts and legacies are paid" to certain legatees, and it was held that the residue of the decedent's personal property, consisting of certain bank annuities and other personal property, passed and were included in said clause. In Matter of Miller, 48 Cal. 165, 22 Am. Rep. 422, after certain bequests, the will contained this paragraph, "that my mother receive the balance of my money, for her benefit as long as she lives, and for her heirs after," and it was there held that the word "money" was used in its widest and popular sense, so as to include the personal estate of testator. In Paul v. Ball, 31 Tex. 10, the testator, after disposing of his real estate and bequeathing certain sums to his next of kin, declared as follows: "The remainder of money I may have at the time of my decease I will and bequeath." Then follow the names of the persons to whom he desired the same should go. It was there held that money meant, not only cash on hand at the time of testator's death, but also money due on mortgages, notes, and accounts.

The two cases principally relied upon by the brother, James L. Blackstone, are Beck v. McGillis, 9 Barb. 35, and Mann v. Mann, 1 Johns. Ch. 231. In the former case it was held that under a bequest of "all moneys that I shall die possessed of" the term was used in its restricted sense and did not include a certain bond and mortgage and certain rents and insurance money due upon certain policies belonging to testator. It may be observed, however, that the decedent was careful to bequeath certain bonds and mortgages and certain shares of stock, and neglected to include one bond and mortgage and rent due from one tenant, and it was properly argued that, having directed what should be bequeathed to the legatee, who was his daughter, under the phraseology of the will she should not receive more than was specifically bequeathed her. In Mann v. Mann, supra, the testator bequeathed to his wife "all the rest, residue, and remainder of the moneys belonging to my estate at the time of my decease," and certain furniture, farming stock, utensils, etc.; to the daughter of his brother $500, to be paid out of the proceeds of the sale of certain real estate; canceled a debt which his brother owed him; and the residue of his estate, both real and personal, he devised and bequeathed to the two children of

his brother and the representatives of two deceased brothers, in equal portions. It was held that said clause did not include bonds, mortgages, or other securities. There is no doubt from the will itself but what this was the intent of the testator. The residuum of the real and personal estate is given to the children of his brothers. There could be no residuum of the personal, if it was all included in the word "moneys" in the preceding clause disposing of the same to his wife, and he is specific in the use of the word when he discharges and exonerates his brother from any debts he owes him. The context of the will clearly shows it was the intent of the testator to use the word "money" in its restricted sense, and to apply it only to gold and silver, or the "lawful circulating medium of the country."

These two cases are not in conflict with other cases where moneys have been held to include stocks and securities, because in each particular case the intent is drawn from the phraseology, clearly indicating what the wish of the testator was. No case, however, has been found where the words "all money that remains" or "all remaining money," when used as a residuary clause, has been held differently than that said words embraced and included the remaining personal estate, whether it be money, stocks, or bonds. In Smith v. Burch, 92 N. Y. 228, the court said:

"The word 'money' has sometimes been held to include securities, stocks, personal property, money in bank, and money in the hands of agents, when the context and all the circumstances which were rightfully considered indicated such to be the intention of the testator."

The same doctrine is held in Sweet v. Burnett, 136 N. Y. 204, 32 N. E. 628.

The rules laid down in the foregoing cases may be applied with much force to the case at bar. The term "money" can be used in a restricted, and also in an enlarged, sense. In one it is a standard of value or medium of exchange stamped by government authority; and in the other, in addition to this, it includes stocks, bonds, and other personal securities of an investment nature. Which of these did the testatrix have in her mind when she used the expression in question? If the former, she died intestate as to nearly her entire personal estate. Such a construction would be in conflict with ordinary experience and a condition not to be expected. The law favors such an interpretation as will dispose of the property of a testator. Being unfamiliar with proper legal terms, the testatrix herein neglected to devise her real estate; but that should not operate against the testamentary disposition of her personal property, if her intent to bequeath the same can be fairly drawn from the entire will. A testator may include in a residuary clause personal or real estate, or confine it to a particular portion of his property. The latter she endeavored to do. There was much significance in the expression she employed. Her intent was to bequeath what was left after the payment of two classes of charges—her legacies and debts. It was her habit to invest her estate, so that a comparatively small sum of money was in her possession. This was the fact when the will and codicil were executed and at the time of her death. She knew that when said legacies and debts were paid there would be no money left for her cousin, unless her securities were included in said disposing clause. To

hold otherwise would be to charge her with deliberately inserting in her will a provision which was worthless. We are not here to discuss whether her brother received much or little of her estate, except to refer to the language she employed to aid in ascertaining what was her intent. It would be a strained and unnatural construction to hold that, after bequeathing him a specified amount, she deliberately died intestate, so he would possess the residue. What she desired him to have found expression in the second clause. Her bounty to him was there defined and her wishes made known.

Taking the will in its entirety, the conclusion is reached that what remained of said personal estate was bequeathed in said fourth clause to the legatee therein named.

Decreed accordingly.