KERLIN *v.* YOUNG; *et vice versa.*

1. Where written articles of partnership provided that the interest of the partners in the firm business, assets, and profits "shall be in proportion to the amount of cash invested by each, which is as follows: R. O. Kerlin seven eighths (7/8) or $35,000.00, and R. G. Young one eighth (1/8) or $5,000.00," and that if Young should become dissatisfied, or if Kerlin should become dissatisfied with Young, or should Young desire to withdraw, or should Kerlin desire that Young should withdraw, "the only amount which he can receive upon his withdrawal at his own election or at the request" of Kerlin, "shall be the amount which he has paid into said business, viz.: $5,000.00;" and where prior to the execution of the articles of partnership Young was engaged in a business similar to a portion of the business which the partnership

was to conduct; and where Kerlin became dissatisfied with Young and requested Young to withdraw from the partnership, which Young did: —in a suit brought by Young against Kerlin, to recover the sum of $5,000 which he alleged he had put into the partnership, evidence tending to show that prior to the execution of the articles of partnership, and pending negotiations which led up to their execution, it was agreed between Young and Kerlin that Young's machinery, equipment, and stock on hand then owned and used by Young in the conduct of his individual business should be accepted by the partnership as Young's one-eighth contribution to the capital of the firm, or at the valuation of $5,000, was properly admitted over the objection that it tended to add to, vary, and contradict the written articles of partnership, it appearing that Young's machinery, equipment, and stock were received by the partnership as Young's contribution to its capital, Young contending that it was so received unconditionally at a valuation of $5,000 and in full payment of his one-eighth interest in the firm, and Kerlin contending that he agreed to take said property at $5,000 provided it was worth that sum.

2. An amendment to the petition of Young, praying that, in the event it was found that he had not contributed assets of the value of $5,000, he be permitted to recover the reasonable market value of the equipment which he delivered to the firm, was not subject to demurrer on the ground that it set up a new and distinct cause of action.

3. It was not error to overrule an exception to the finding of the auditor to whom the case was referred, that "if the property delivered by Young was of less value than $5,000 and was not accepted as of that value by the defendant for the firm, the plaintiff was entitled to recover the value of the articles actually turned over by him to the firm."

4. The verdict of the jury is supported by evidence.

5. Having affirmed the judgment of the court below on the main bill of exceptions, it becomes unnecessary to deal with the errors complained of in the cross-bill.

Nos. 4359, 4360.   October 15, 1924.

Exceptions to auditor's report.   Before Judge E. D. Thomas. Fulton superior court.   April 6, 1923.

Young brought suit against Kerlin, and made the following allegations:   On June 8, 1920, petitioner and Kerlin entered into a partnership contract in which it is recited, that Kerlin is the owner of the business known as the Overland-Kerlin Company, located at 444 Whitehall Street in Atlanta; that Young desires to have an interest in said business and to be employed by Kerlin in the same; that the name of said firm shall be the Overland-Kerlin Company; that the business in which said firm is to engage is buying and selling automobiles and automobile accessories, and repairing automobiles; that "the interests of the parties in the said firm business, assets, and profits shall be in proportion to the

amount of cash invested by each, which is as follows: R. O. Kerlin seven eighths (7/8) or thirty-five thousand. ($35,000.00) dollars, and R. G. Young one eighth (1/8) or five thousand ($5,-000.00) dollars;" that the loss of said business shall be borne in the same proportion as the profits are shared and the expenses shall be borne in like manner, and, in view of the fact that Kerlin "owns the majority interest in said business and assets, that he shall have control of the management and operation of said business," and Young is not to incur any debts in the name of the firm, but all obligations thereof are to be made by Kerlin; "that each of the parties hereto are to devote their whole time and attention to the operation and management of said business;" that Young is to have charge, subject to the general supervision of Kerlin, of all of the repair department, and Kerlin shall have charge of the buying and selling, and of the office and finances of said firm; "that in the event" Young "shall become dissatisfied," or if Kerlin shall "become dissatisfied with" Young, or should Young desire to withdraw from the business, or Kerlin desire him to withdraw, "the only amount which he can receive from said business upon his withdrawal at his own election or at the request of the party of the first part [Kerlin] shall be the amount he has paid into said business, viz.: five thousand ($5,000.00) dollars, and that he shall not be entitled to any of the accretions or profits of said business except so long as he remains in said business and so long as his money remains in said business, and that while his capital is used therein he shall receive profits from time to time in proportion to the amount he has invested as herein set forth." It was further agreed "that the parties hereto shall have the privilege of drawing a salary of not more than two hundred fifty ($250.00) dollars per month each, which said salaries shall be charged to the expense account of said business." Petitioner does not know how much Kerlin paid into said partnership, but he was to pay therein $35,000 in cash. The partnership business began on or about June 15, 1920, and continued until August 16, 1920, when Kerlin became dissatisfied with petitioner as a partner, and demanded that he withdraw from said business, which he then and there did. During the existence of the partnership Kerlin had charge of the books thereof, and for this reason petitioner is unable to say whether or not the firm made any

7

profits in the operation of said business. Kerlin told petitioner when he withdrew that the partnership was operating at a loss. Under said contract petitioner was to receive $5,000 from the partnership in case he voluntarily withdrew therefrom, or in case Kerlin requested him to withdraw. He has demanded from Kerlin an accounting and settlement based upon the contract, but Kerlin fails and refuses to account to him for said $5,000. Kerlin is continuing the business of the partnership, using its assets for that purpose, and the same is being carried on at a loss. The petitioner prayed, for an accounting and settlement between the partners; for a receiver to take charge of the assets of the firm, dispose of them, and wind up its affairs; for a judgment against the defendant for $5,000 or in such sum as may be found due petitioner; and for general relief.

Kerlin answered the petition, and alleged that Young did not comply with his part of the contract by paying into said firm the sum of $5,000 in cash, but represented to Kerlin that he had between $5,000 and $6,000 worth of shop equipment, tools, and materials, which he would put into the business at a valuation of $5,000. This equipment was delivered at the place of business of the firm. Young showed the same to Kerlin, and asked him what he thought of it. Kerlin replied that he was not familiar with the prices of equipment of that kind, and did not know what its value was. He requested Young to make out an itemized list of the material he proposed to furnish, showing its value. Young promised to do this, but put off so doing for some time. Kerlin again demanded, and Young furnished this list, but it did not show in detail the worth of the items. Young furnished a general statement they were worth $5,000. Kerlin did not accept this as conclusive or binding, but temporarily accepted such statement until Young could furnish an itemized list thereof. Young never did itemize the list of articles, and Kerlin was never able to get from him their detailed value. At his own expense Kerlin had these materials itemized, and alleges that the materials furnished by Young were worth $834.60, and no more, which sum Kerlin is ready and willing to pay to Young, and has offered to pay the same to him, and makes a continuing tender thereof. Kerlin offered to deliver to Young the property furnished by him, except such articles as had been used, for which he agreed to pay cash,

and Young refused to take said property in payment. Young arbitrarily demanded payment of the sum of $5,000 cash, which Kerlin refused to pay, because Young had furnished materials worth considerably less than $1,000.

The case was referred to an auditor, who made a report of his findings of law and fact. The plaintiff excepted to the auditor's ruling excluding the following evidence offered by plaintiff: The testimony of Young, that under his agreement with Kerlin his machinery, equipment, and stock on hand at 133 Ivy Street, which he put in the business of the Overland-Kerlin Company, was to be accepted by Kerlin as his one-eighth interest in the business, or $5,000; that this agreement was made about the middle of May, in the presence of one Marbut; that Kerlin had been talking to Young some time about taking his service station or taking charge of it, provided he could secure the agency; that he came over there one day and said he had a service station, and made an appointment to meet Young one afternoon to go into the details; that Kerlin met Young as agreed, and they entered into an agreement, Young telling Kerlin that he did not have the cash to put in, but valued his stuff at $5,000 or more, and would put that in; that they had a final talk and "thrashed out" their several duties and obligations and salaries; that it was specifically stated that the equipment was to go in as Young's part of the business; that Kerlin asked Young to start moving the first of June, which Young could not promise, as he was working on the floor which had to be completed; that Young was to carry his business out there, such as he could, and that 90 per cent. of the work done at the firm's place in the repair shop, with the exception of work done on the Overland-Kerlin Company cars, was for customers of Young that he had taken to the firm. The testimony of Marbut to conflicting facts. The testimony of Kerlin, that he had a conversation with Young in the rear of Young's place at 133 Ivy Street, a short time before he moved out to their place of business; that Marbut was there; that he told Young he had commenced with a clean sheet out there, and would have to have Young's equipment; that there was a distinct understanding that it was to be valued at and worth $5,000, which was never done during the life of the contract; that it was discussed at what it was to be worth in the presence of Young and Marbut; that he remem-

bered hearing Young and Marbut testify before Judge Pendleton substantially as they had before the auditor; that he testified before Judge Pendleton that they testified substantially correctly, except that they did not go far enough; that he agreed to take the stuff at $5,000 provided it was worth $5,000. The trial judge sustained this exception, and to this ruling the defendant excepted and assigns error thereon.

The plaintiff tendered an amendment to his petition, in which he alleged that the assets delivered by him to the firm were of the reasonable value of $5,000; and that should it be found that said assets were not accepted as of that value and were of less value, then plaintiff sues for the value of said assets. The defendant demurred to this amendment, on the grounds: (1) That it sets up a new and distinct cause of action, and (2) that thereby the plaintiff seeks to recover the reasonable value of certain assets alleged to have been delivered to defendant by plaintiff; whereas in the original petition plaintiff seeks to recover from defendant a sum certain under the terms of an alleged contract, and by the amendment he seeks to engraft a new and distinct cause of action upon his original petition. The trial judge overruled the demurrer, and the defendant excepted and assigned error.

The auditor made this finding of law: "That property of the value of less than $5,000 was turned over to the defendant, and was not accepted as $5,000 by the defendant, and plaintiff is entitled to recover in this proceeding, and under this evidence, the value of the articles actually turned over by plaintiff to defendant." To this finding the defendant excepted. The trial judge overruled this exception, as the plaintiff had amended his petition as stated above. The defendant excepted to this ruling and assigned error.

The auditor found that under the partnership agreement Young was obligated to furnish to the firm assets and property of the value of $5,000, and that Kerlin had not accepted the goods which Young had delivered as a compliance with the agreement. He further found that the value of the goods delivered by Young was $1,815.76, and that as a matter of law Young was entitled to recover that sum from Kerlin. Kerlin excepted to this finding, on the ground that Young had sued for $5,000 which he claimed was due him on a contract which he had performed, and that the

undisputed evidence showed that he had not performed the contract as construed by the auditor. The court overruled this exception, and to this ruling Kerlin excepted.

Thereafter exceptions of fact and of law, both of the plaintiff and the defendant, to the auditor's report came on to be tried before a jury, which returned a verdict finding in favor of the plaintiff's exceptions numbered 1, 2, and 3; and that the property delivered by Young to Kerlin under the partnership agreement was of the value of $5,000. The jury found against exception number 3 of the defendant. The defendant moved for a new trial on the general grounds. The trial judge overruled this motion; and error was assigned upon this judgment.

*Fuller & Bell* and *Troutman & Troutman,* for Kerlin.

*Burress & Dillard,* for Young.

HINES, J. (After stating the foregoing facts.)

1. The written articles of partnership provide that the interest of the parties in the firm business, assets, and profits "shall be in proportion to the amount of cash invested by each which is as follows: R. O. Kerlin seven eights (7/8) or $35,000.00, and R. G. Young one eighth (1/8) or $5,000.00." The partnership contract further provides, that, if Young shall become dissatisfied, or if Kerlin should become dissatisfied with Young, and should Young desire to withdraw, or should Kerlin desire that Young should withdraw, the only amount which he can receive upon his withdrawal at his own election or at the request of Kerlin, shall be the amount which he has paid into said business, viz.: $5,000.00. The written contract of partnership was executed on June 8, 1920. On the hearing before the auditor testimony was introduced to the effect that prior to the execution of the articles of partnership, and pending the negotiation which led up to their execution, it was agreed between Young and Kerlin that Young's machinery, equipment, and stock on hand at his place of business should be accepted as his one-eighth interest in the firm business, or at a valuation of $5,000. Kerlin testified before the auditor that he told Young that he had commenced with a clean sheet, that he would have to have the equipment of Young to operate the service end of the firm's business, and that if he had equipment worth $5,000 it would answer the purpose of a credit of $5,000, but that there was a distinct understanding between them that the

equipment was to be valued at and worth $5,000. He further testified that the above testimony introduced by Young was substantially correct, that he agreed to take the equipment and supplies which Young had on hand at $5,000, provided it was worth that sum. On motion of the defendant the auditor ruled out the above testimony, on the ground that it contradicted and varied the written contract of partnership. On exception to this ruling the trial judge sustained the same, and permitted the above testimony to go to the jury on the trial of exceptions of fact to the auditor's report. The defendant excepted to this ruling, on the ground that all oral negotiations leading up to the execution of the partnership contract were merged in it, and that the above testimony adds to, varies, and contradicts the written articles of partnership. Is this exception well taken? We think not. Under the partnership agreement, Young was to contribute to the capital of the firm $5,000 and have a one-eighth interest in the partnership. Kerlin was to contribute to the capital of the firm $35,000 and have a seven-eighths interest therein. It is insisted that the language, "the amount of cash invested by each," means that Young was to put $5,000 in cash, or its equivalent, into the business after the formation of the partnership; and that to permit proof of a prior agreement that Kerlin agreed to accept the equipment, tools, and material which Young had in the business then being conducted by him individually would be to add to, vary, or contradict the terms of a written contract. The word, "cash," means money—usually, ready money—but it also means money or its equivalent. Under this provision of the articles of partnership, it would not be reasonable to hold that Young could not contribute his part of the capital of the firm in property, if that course was agreeable to his partner. This being so, his part of the capital was furnished in property the value of which would have to be fixed and determined. It certainly would be fair to permit his copartner to fix this valuation. After the formation of the partnership, Young turned over to the firm his equipment, tools, and merchandise of his individual business. He alleges these were accepted by Kerlin for the firm at a valuation of $5,000, and in full payment of the capital which he was to contribute to the firm. He alleges that these goods were so accepted by Kerlin unconditionally. Kerlin admits the acceptance of the goods by

him for the firm at this valuation and in full of the contribution Young was to make, but insists that the valuation was conditioned upon its being subsequently found that the goods were of this value. Here was a sharp issue of fact between the partners. On the trial of this issue, we think it was permissible for Young to prove that prior to the execution of the articles of partnership, and pending the negotiations which led up thereto, Kerlin had agreed unconditionally to accept this property at a valuation of $5,000 and in full of the amount Young was to contribute. This testimony does not add to, vary, or contradict the written contract. It was properly admitted to bolster up Young's version of the manner in which he had fulfilled his obligation to put $5,000 into the firm. Such testimony was consistent with the terms of the written contract. So we are of the opinion that the court below did not err in its ruling in this matter.

2. Young tendered an amendment to his petition, in which he prayed that, in the event it was found that he had not contributed assets and goods of the value of $5,000, he should be permitted to recover the reasonable market value of the equipment he delivered to the firm. This amendment was allowed subject to demurrer; and the defendant demurred thereto on the ground that it set up a new and distinct cause of action. The trial judge overruled this demurrer, upon which ruling the defendant assigned error. We do not think this amendment set up a new and distinct cause of action. The contract between the parties provided for contractual rescission, on the happening of which at the instance of either party Young was to receive the amount he had put in the business, which amount was stated to be $5,000. If he had put in less, and Kerlin rescinded the contract, then certainly he would be entitled to recover the amount he had actually put in. This amendment, in which he sought to recover a smaller amount, if it was found he had not contributed the full amount he was to put in the business under the contract, did not set up a new cause of action. He originally based his action solely upon contractual restitution. By this amendment he sought to recover on equitable restitution, if he failed to make out his case of contractual restitution. His cause of action was rescission of a partnership contract by Kerlin and his right to restitution. He could, by amendment, allege another ground on which he was entitled to such

restitution, without adding a new and distinct cause of action. This is what his amendment did. *McCandless* v. *Inland Acid Co.,* 115 *Ga.* 968 (42 S. E. 449). The equitable right to restitution upon the rescission of a contract does not depend upon the full performance of the contract by the party seeking restitution. This right rests upon the doctrine that a party who has received from another anything of value by virtue of a contract can not rescind the same without restoring whatever thing of value he has so gotten. Civil Code (1910), §§ 4305, 4306.

3. The auditor found that "if the property delivered by Young was of less value than $5,000 and was not accepted as of that value by the defendant for the firm, the plaintiff was entitled to recover the value of the articles actually turned over by him to the firm." To this finding of law the defendant excepted. The trial judge overruled this exception, to which ruling the defendant excepted. We think this finding of law was correct. This follows from what we have said touching the allowance of the amendment to plaintiff's petition. If the allowance of that amendment was correct, and we have undertaken to show that it was, then this finding of the auditor was right.

4. In his motion for new trial the defendant insists that the verdict of the jury was contrary to law, and is without evidence to support it. We think that there is evidence to support the verdict. The jury was authorized to find that the defendant delivered to this firm goods of the value of $5,000, in full of the contribution which he was to make to its capital. This being so, there was evidence to support the verdict finding that he was entitled to restitution to that amount.

5. In his cross-bill of exceptions the plaintiff complains of certain rulings made by the court during the trial of the case. Having affirmed the judgment of the court below on the main bill of exceptions, it becomes unnecessary to deal with the errors complained of in the cross-bill.

*Judgment affirmed on main bill of exceptions; cross-bill of exceptions dismissed. All the Justices concur.*