McMULLEN et al. v. SIMS et al.
No. 1431—5637.

Commission of Appeals of Texas, Section A.
April 1, 1931.

Douglas & Scott, of Lubbock, and J. M. Harris, of Snyder, for plaintiffs in error.

Bean & Klett, of Lubbock, and Leon Moses, of Post, for defendants in error.

CRITZ, C.

This suit was instituted in the district court of Garza county by Mrs. Helen T. McMullen and Mrs. Beverly S. McMullen, joined by their respective husbands, against V. B. Sims, L. R. Sims, Mrs. Laura Sims, a widow, and the First National Bank of Post, Tex. The two plaintiffs are the two daughters named in the will of E. C. Sims, deceased, hereinafter set out. Mrs. Laura Sims is the mother of the deceased. The father of the deceased is dead. The purpose of the suit is to recover for the plaintiffs the estate of E. C. Sims, deceased, and to require an accounting by V. B. Sims. The suit requires the construction of the will of E. C. Sims, deceased. We here copy such will, omitting formal parts:

"The State of Texas, County of Garza

"Know all men by these presents:

"That I, E. C. Sims, of Garza County, Texas, being of sound and disposing mind, and desiring to make provisions and arrangements for the handling and management of my estate, and for passing and conveying title thereto, in case of my death, make and publish this my last will and testament, revoking any and all wills heretofore made by me.

"1. It is my desire and I so direct that my executors hereinafter appointed shall fully pay off, satisfy and discharge all legal indebtedness and obligations due by me at the date of my death, including my last medical, physician and funeral bills and expenses.

"2. Having in mind the pending separation of myself and wife, Gladys Johnson Sims, pre-supposing a divorcement of such marriage and a continued separation, and there now being no community property rights existing between myself and wife, she having received and taken all of her separate and individual as well as her interest in the community property prior to this date, and entertaining a strong fatherly love for my two girl children, Helen Trix Sims and Mildred Beverly Sims, and to the end that my said children may be provided for should they at any time hereafter become in want and in need of a support, I hereby give and bequeath unto my brother, V. B. Sims, all and entire of my estate of which I may die possessed of, including all of my real and personal property, bills receivable, life insurance policies or any and all other demands, annuities or other incomes or sources of income.

"3. It is my desire and I so direct that my said brother, V. B. Sims shall take and hold said properties of and belonging to my estate and to handle same according to his best judgment in such a manner that said estate may be placed and conducted upon an income basis, that is, that moneys belonging to my said estate shall be invested or loaned at interest in a safe manner so as it may be continually bringing and bearing an income, and that the real estate may be so managed, handled and controlled as to produce an income either in rents or leasage, and that my personal property be converted into cash at such time and in such manner as to produce the best results in sales and prices, the proceeds of such matters and things to be kept and maintained in one common fund to be known and continued as the E. C. Sims estate. I hereby confer upon my said brother as legatee hereunder full power and authority to make and execute any and all instruments necessary to the handling and disposition of my said estate for carrying out the purposes of this my last will and testament.

"4. It is my desire and I hereby direct that should my said two daughters or either of them hereafter become in a state of want or in need of funds necessary to meet their wants so as to prevent them from being embarrassed for the want of funds to meet their actual living and necessary expenses in a reasonable economical manner of living, then that my brother, legatee hereunder, shall pay such sum or sums as may be actually necessary to relieve any such want or need to my two said daughters, or either of them, it being my desire that they my said daughters shall be each treated as nearly alike in being made recipients of the funds of my said estate to be paid

for meeting their necessities for a living and support as hereinabove indicated.

"5. Should my father and mother, or either of them, at any time become in the state of want or in need of funds for a support and with which to pay the actual expenses necessary to their living in ease with a reasonable degree of economy, then I direct that my said brother pay to my said father and mother, or to either of them, such funds of my estate as may be necessary to relieve such want or need to which they may be subjected, though I do not now anticipate that such conditions will ever exist as to my said father and mother unless some dire adversity or calamity should befall them.

"6. I hereby nominate and appoint my father, S. D. Sims, my brothers, V. B. Sims, and L. R. Sims as executors of this my last will and testament, directing that my said father and said brother V. B. Sims shall have full power and authority as executors of this my last will in counseling with each other in carrying out the provisions of this my last will, and should they for any reason not be able to agree upon any matter, thing, or issue pertaining to the administration of my said estate, then shall they call in for consultation L. R. Sims the other and third executor herein appointed, and any two of said three executors agreeing upon said matter of controversy shall control in the decision of such matter, such two or three executors so acting together is only necessary under this will in determining as to the transaction to be had in and about the administration of my said estate, but the signature of my said brother V. B. Sims shall only be necessary to any conveyance or other instrument in writing to give same full force and effect in passing title or otherwise perfecting any transaction required to be in writing pertaining to the affairs of my said estate and I direct that my said executors shall not be required to give bond, and that no other or further proceedings be had in the courts of the country in probating this my last will other than filing and making proof of same and in preparing and filing an inventory of my estate in the manner ordinarily required in the administration of estates.

"7. It is my desire and I direct that my life insurance policies one of which is now made payable to my estate and the other to my said two girl children as the beneficiaries therein, which said policy so payable to my said children I shall now take steps to have changed so that same will be payable to my estate, and that said policy be collected and the proceeds or funds thereof be put into the general fund of my estate in the same manner as any and all other proceeds of my said estate and that same be administered hereunder in like manner as other funds of my said estate, the funds of my said estate not paid out under the provisions of this my last will to be and remain in the hands of and as the property of my said brother V. B. Sims."

We shall first proceed to construe this will, and in order to do so we must announce certain well-established rules of construction. These rules are as follows:

1. There are no arbitrary or unbending rules in the construction of a will, as no two wills are in all details alike. In construing a will form should be subordinated to substance, and if the testator's intention can be ascertained, from a reading of the whole will, such intention must be given effect, however informal the language may be. 40 Cyc. p. 1396.

2. Where the testator's intention is manifest, from the context of the will and surrounding circumstances, but is obscured by an inaccurate mode of expression, the language will be subordinated to the intention, and in order to carry out the intention of the will the court will, so far as possible, depart from the strict words, and read a word or phrase in a sense different from that which is ordinarily attributed to it, and for such purpose may change the language of the will, such as rejecting superfluous words, or restricting them in their application. This rule, of course, only applies where it is necessary in order to effectuate the testator's intention, clearly apparent from the will. Where the language of the will is plain and unambiguous, the court cannot give it a meaning different from that warranted by its words merely for the purpose of carrying into effect a conjecture or hypothesis as to the testator's intention by changing such language. 40 Cyc. 1399.

3. Where an ambiguity exists in a will, unless there is a manifest intention to the contrary, the presumption that the testator intended that his property should go in accordance with the laws of descent and distribution will be applied as an aid in the construction of the will. It follows that such a construction should be given the will as favors the heirs at law, or next of kin in preference to disinheritance. 40 Cyc. 1412.

4. In determining the intention of a testator, separate statements and clauses should not be considered alone, but the whole will should be taken together, and each part construed with relation to the language used in other parts so as to give effect to the general intention thereby ascertained. If possible, the will should be so construed as to form one consistent whole. The whole scheme of the will should be kept in mind and the will construed from its four corners so as to give effect to the clearly expressed intention of the testator. 40 Cyc. 1413.

Now bearing in mind the foregoing rules of construction, and applying them to the in-

stant will, let us construe the same so as to give effect to the purpose and intent of the testator as expressed by the will.

When we construe this will from its four corners; when we subordinate form to substance; when we consider from the context of the will, and the circumstances and purposes of its execution, what the testator wanted to accomplish; when we consider that the manifest and expressed intention of the testator was primarily to provide for his two daughters, whom he expressed a strong fatherly love for, and whom by all natural and statutory laws he was bound to care for and support, they at the time being minors; and when we consider the entire will, and not separate statements or clauses—we are led to the inevitable conclusion that testator intended to will and did will his property to V. B. Sims as trustee for his daughters, just as completely, and just as effectively as if he had written the word trustee into the will. In other words, we are convinced that it was not the intention of testator to give to V. B. Sims any title to his estate except as a trustee for the two daughters. We think that as expressed by the will testator also intended to charge the property with the care of his father and mother, in case they needed it, but that he considered this a secondary and remote contingency.

We therefore hold that V. B. Sims only took title to this property as a trustee for the two daughters of testator, and that he has never had any other title thereto. We further hold that the real title has vested at all times since the testator's death in said two daughters.

It is further manifest to us that while the father and mother (the father is now dead) were not intended to have any title to the estate, still it was intended to burden it with their necessary wants should they become in need.

Since we have held the title vested in V. B. Sims by the will is that of a trust, we must proceed to decide the other issues in the case regarding him as such.

It is the duty of a trustee under a will to carry out and perform the instructions of the will, which created the trust. In this connection we hold that his rights and powers, as well as his duties, must be ascertained by an inspection of the will, which is the instrument by which the trust was created. As to the performance of the duties of a trustee the general requirements are that he must act in good faith, and exercise that degree of care and diligence that an ordinarily prudent and careful man would exercise in the management of his own affairs. 39 Cyc. 293.

We shall now proceed to examine the record, including the statement of facts and findings of the trial judge, to ascertain if the trustee has violated the trust in such a manner as to justify or require his removal.

When we come to examine this will, we find that the trustee is required to do three principal things, as follows:

1. He is required to preserve the integrity of the estate and keep it producing revenue;

2. He is required to look after the needs of the two daughters, and use the funds of the estate so that they do not come to want; and

3. In the event of need he is required to use the funds of the estate to supply the needs of the father and mother of the testator in case they come to want.

With reference to the first requirement, it is shown conclusively that the trustee has not kept the estate revenue producing. He has collected large sums of life insurance, and has had large sums in cash on hand at various times, but has made no effort to lend the same; he has used the land for his own benefit without accounting to the estate for any rentals; and he has practically dissipated the cash and personal property of the estate. In fact, we hold, as a matter of law, that the trustee has violated the trust in his business management of the estate.

With reference to the second requirement, it is shown that at the time of testator's death the two girl children of testator were minors, and in need of support. It is further shown that they had no means of support and education except the funds that were given them by their mother's relatives. It is further shown that they have both married men of limited means and are now and for some time past have been in need of assistance. In the face of all this it is shown that V. B. Sims has never given them any assistance out of the estate, and when called on to do so asserted his own title to the property adverse to the two daughters. We therefore hold as a matter of law that the trustee has violated the terms of the trust in this particular.

With reference to the third requirement, we find that the testator's father is dead, and there seems to be no contention that the mother is in need of any aid from the estate at this time, or that she is liable to become in need.

From the above we conclude that the trustee has been guilty of such violation of the trust imposed upon him that he should be removed, and required to render an accounting of his trusteeship up to the date of the removal.

We further conclude that the contents and provisions of this will disclose that the trust thereby created was intended to be

personal in the brother of the testator, V. B. Sims, and was not intended to extend as a trust beyond the time that V. B. Sims should administer the same in person. Furthermore, there seems to be no good reason for further continuing it.

We therefore conclude that no new trustee should be appointed, but that the two daughters should recover the estate, burdened with the duty to aid the mother of the testator should she come to want.

The record discloses that V. B. Sims claims credit for certain moneys which he contends the testator owed him prior to his death. In regard to this matter it is contended by the two daughters that V. B. Sims is disqualified to testify by article 3716. We think V. B. Sims is a legal representative of the estate within the meaning of the statute. Furthermore, he must act as an executor in the payment of debts. He is therefore disqualified as a witness.

It is shown that V. B. Sims claims credit for several thousand dollars paid to attorneys to prosecute parties accused of murdering E. C. Sims. The trial court held this expenditure illegal because in violation of the express terms of the will. This holding was correct. The Court of Civil Appeals, 22 S.W. (2d) 313, also held the expenditure illegal, but held that the matter was immaterial at this time because there is sufficient money on hand to pay the amount allowed by the trial court for the two daughters. Of course this ruling of the Court of Civil Appeals is erroneous in view of our holding that the daughters are now entitled to recover the estate.

The two daughters contend that V. B. Sims should be held to account for failure to keep the moneys belonging to the estate drawing interest. Under the will it was his duty to do this. Under the law it was his duty to exercise reasonable diligence to do so. On another trial this matter can be adjusted by the application of this rule.

We think we have sufficiently discussed the law to enable the trial court on another trial to legally adjudicate the amount due by V. B. Sims to the estate.

We recommend that the judgments of the Court of Civil Appeals and the district court be both reversed, and the cause remanded to the district court with instructions to remove the trustee and award the title and possession of this estate to the two daughters of the testator, burdened with the care and support of the testator's mother, should she ever come to want, and further that V. B. Sims be required to make a full and complete accounting of his trusteeship, and that the two daughters have judgment against him for the amount shown to be due by him to the estate.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded with instructions as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.