In the Matter of the Estate of MARY ALICE MCKENDRIE, Deceased.

Surrogate's Court, Richmond County, March 5, 1934.

*Edward M. Seguine*, for the petitioner.

*William Richman*, special guardian for infant legatees.

*William Ryan*, special guardian for infant next of kin.

SMITH, S. The decedent, Mary Alice McKendrie, an elderly woman, died, without children or descendants, on October 12, 1933, leaving a holographic will, dated January 15, 1926, written on a printed will form, which, without the printed words, reads as follows: " I give devise and bequeath to Thomas Tate one half of the cash money I leave, the other half to be equally divided between Mary Alice De Forest, my niece, and Paul C. Taylor, Jr., my nephew. One grave to Mrs. Josephine Housman and two to Ella Ivers in my plot in Fairview Cemetery. All my personal effects, such as clothing & so forth I give to Elnora De Forest. My insurance to pay funeral expenses and put my name on headstone." Decedent's testamentary expressions are simple and direct, and the only interpretation necessary, if interpretation is needed, is of the words, " cash money." If the words were limited to their restricted meaning, then decedent died intestate as to all of her estate except a few dollars in money, her personal effects, and her burial plot, but if the words are given the broad and comprehensive meaning that should be applied to them, and that the decedent

unquestionably intended them to have, then the will disposes of all of her estate.

It appears from extrinsic evidence that the decedent was a depositor in a savings bank and an investor in a savings and loan association prior to the time the will was executed and that she was in the habit of depositing any money that she accumulated in a bank or investing it in a savings association, and at the time of her death her estate, other than her personal effects, consisted of money in banks and shares in a savings and loan association and only a few dollars in money, substantially the same situation as to investments as existed when the will was made, and to find a limited or restricted meaning to the words to be interpreted, decedent would have intended to die intestate as to substantially all of her estate, and to find such an intention in the absence of any reference to her other property and in the absence of a residuary clause would do violence to her evident intention for, as it has been held that the absence of any residuary clause tends to sustain a construction which will avoid intestacy, the inference being that the decedent believed that he had disposed of his entire estate and considered such a clause unnecessary. (*Ward* v. *Stanard*, 82 App. Div. 386, 391.) And the presumption against intestacy is very strong and is applied in all cases. (*Matter of Goldmark*, 186 App. Div. 447; *West* v. *West*, 215 id. 285; *Matter of Schriever*, 221 N. Y. 268.)

In *West* v. *West* the facts were somewhat similar to those in the instant case. The will was the work of a layman and stated in part: " I give and bequeath to my aunt Eliza Sheehan all of my personal property." The decedent left real and personal property.

The court said in part: " That the will was the work of a layman is apparent. * * * Did the testator intend by this will to dispose of his personal property only? Such an idea seems to be highly improbable. It is also very improbable that, if that were his idea, he would not in any way refer to his other property. It would have been natural for him to have made some reference to the fact that he desired his heirs to have the remainder of his property, or that he possessed other property. He could not sit down to make a will without the disposition of all of his property occurring to him, and, when no mention is made of it, and no reference is made to any of his heirs, the conclusion seems almost irresistible that he thought that he had disposed of all his property."

The court construed the will as if the word " personal " had been omitted so as to pass the entire estate of the decedent.

Where the context of a will discloses the intent of the testator to attribute to the word " money " a specific meaning which is more comprehensive, that meaning will be adopted, and may comprehend

any class of property so defined by the context. (*Matter of Rogers,* 91 N. J. Eq. 294; 109 Atl. 16.) And where a will after certain legacies stated, " My mother shall receive the balance of my money for her benefit as long as she lives, and for her heirs afterwards," it was held that the word " money " was evidently used in its widest and most popular sense in which it frequently is employed as synonymous with property and estate (*Matter of Miller,* 48 Cal. 165; 22 Am. Rep. 426), and to same effect, *Matter of Kimberly* (126 Misc. 455). And the word " money " is often used in wills in a broad and elastic sense, and in the light of proper evidence is given meaning in accord with the testamentary intent, and may include personalty, or even testator's entire property. (*Mutual Life Ins. Co. of N. Y.* v. *Spohn,* 170 Ky. 90; 188 S. W. 1078.)

And the broad meaning of the word " cash " has been held to include bank deposits. (*Beit* v. *Beit,* 98 Conn. 274; 119 Atl. 144.) And to include money in the treasury or deposited in banks. (*Am. Brake Shoe & Foundry Co.* v. *New York Rys. Co.,* 277 Fed. 261.) And to mean money which the owner has on hand, or subject to his right of immediate possession. (*Offutt* v. *Troll,* 159 Mo. App. 90; 139 S. W. 487.)

And in the taxing statutes of several of the States the word " money " has been defined as follows: " ' Money ' includes coin and paper money, whether in possession, or deposited in some bank, or elsewhere." (Cobbey Ann. Stat. Neb. 1903, § 10403.)

" The term ' money ' or ' moneys,' whenever used in this act, shall be held to mean gold and silver coin, treasury notes, bank notes, and every deposit which any person owning the same, or holding it in trust and residing in the state *is entitled to withdraw in money on demand.*" (Gen. Stat. Minn. 1894, § 1511; similar statute, Rev. Codes, N. D. 1899, § 1176.)

"As used in the title relating to taxation, * * * the term ' money ' or ' moneys ' shall be held to mean and include any surplus or undivided profits held by societies for savings, or banks having no capital stock, gold and silver coin, bank notes of solvent banks in actual possession, and every deposit which the person owning, holding in trust, or having the beneficiary interest therein, *is entitled to withdraw in money on demand.*" (Bates Ann. Stat. Ohio, 1904, § 2730.)

" The term ' moneys ' or ' money ' shall be held to mean and include gold, silver and other coin * * * whether in possession, or on deposit *subject to the draft of the depositor* * * * *on demand.*" (Civ. Code S. C. 1902, § 265; similar statute, Rev. Stat. Tex. 1885, art. 5064; similar statute, Ballinger Ann. Codes & Stat. Wash. 1897, § 1658.)

"The word 'money' includes * * * deposits which *either in terms or effect, are payable in money on demand.*" (Code W. Va. 1899, chap. 29, § 47, p. 199.)

Bouvier's Law Dictionary defines "money" as: "Gold and silver coins; * * * but, ordinarily, standing alone, it means only that which passes current as money, including bank deposits; but in a bequest of money it has been held to include personal property." And Ballentine's Law Dictionary, in defining "money," says: "However, the word should not be technically construed in interpreting a will, but its meaning should be made to depend upon the context and surrounding circumstances, and it may include both real and personal property."

It appears from intrinsic evidence that in January, 1926, the income and installment shares of the Port Richmond Co-operative Savings and Loan Association owned by decedent would answer to the description of money in bank for the following reasons:

1. The association was operated under the Banking Law of the State of New York; all deposits therein were entered in a pass book in the name of the depositor; the office of the association resembled in all respects a bank with glass partition, brass bars preventing admission, cashier or treasurer behind the ticket windows. All moneys received were entered in a pass book kept by the depositor or shareholder; moneys were loaned to the shareholders on their shares on notes signed by them pledging their shares; interest was paid on the shares or credited semi-annually. The value of the shares were withdrawable in cash up to $1,000, substantially on demand; larger sums were withdrawable at regular meetings or in the discretion of the secretary.

2. The Banking Law, section 397, provided that all shareholders might withdraw the shares at the value of such shares as fixed by the association. (*Matter of Blackstone*, 47 Misc. 538; *Smith* v. *Burch*, 92 N. Y. 228.)

From the foregoing definitions and citations, and without the necessity of spelling out the intention of the decedent from the context of the will, it would appear that the words, "cash" and "money" are usually synonymous and that the broad meaning of the term "money" as used by a layman would, as in the present instance, include all cash in hand, cash in savings or other banks, or even investments in savings and loan associations when such investments may be withdrawn substantially on demand.

Decedent's intention can, however, be found from the absence of reference to her other property and of a residuary clause, and the will construed to pass all of the assets of the estate, except personal effects. If the estate possessed other assets those also would be included in the property passing under the words "cash money."

The will is accordingly construed to bequeath all of the decedent's personal estate (except her personal effects) as follows: One-half thereof to Thomas Tate; one-fourth thereof to Mary Alice De Forest, and one-fourth thereof to Paul C. Taylor, Jr.

Prepare decree admitting will to probate and construing will as aforesaid.