**FLOWER et al. v. DORT et al.**

No. 15438.

Court of Civil Appeals of Texas.
Fort Worth.

June 26, 1953.

Rehearing Denied Sept. 18, 1953.

Cecil Murphy, of Gainesville, for appellants.

Leslie Humphrey, of Wichita Falls, John L. Sullivan, of Denton, and Fred H. Minor, of Denton, for appellees.

RENFRO, Justice.

Suit was filed in the district court of Cooke County by Chas. Flower; Wilbur Flower; Maude Wilcox, joined by her husband; and Hartzell Meacham for a proper construction of the will of Alma D. Flower. Plaintiffs were relatives of W. D. Flower, deceased. Defendants were K. R. Kort, individually and as administrator with will annexed of the estate of Alma D. Flower, and certain beneficiaries of her estate.

The will in question is wholly in the handwriting of Alma D. Flower, and is herein set out in full (paragraphs numbered by us for convenient reference):

"Will of Alma D. Flower

(1) "To my brother, Kelsey,—and three sisters May, Lyda and Ethel,—and three nieces of my deceased sister, Fay—Phyllis, Jane and Betty Jo—: Divide equally ½ of 40,000.00 and *all* of the rest of the

Property left by ~~the~~ W. D. Flower—All of my Personally Property or *(Own Property)* to be divided equally among *my* brother, Kelsey—my (3) sisters, May, Lyda and Ethel—and (3) nieces Phyllis, Jane and Betty Jo—children of my deceased sister, Fay—

(2) "To my deceased husband's, brother, Charlie—sister, Maude, and two children—Wilbur and Hartzell, of my Husbands deceased brother, Harry—divide equally—the other ½ of $40,000.00 left by my husband Wm. D. Flower—and no more—

(3) "Provision: If there is as much $40,-000.00, cash, if not divide the balance—

"Alma D. Flower

· Jan. 12, 1944.

"Witness:

Lyda D. Ely"

It is agreed by all parties that the date shown is in error. The will was actually executed Jan. 12, 1945.

Alma D. Flower died on November 10, 1950, and the inventory filed and approved showed her estate to consist of the following: cash on deposit in banks, $2,729.78; U. S. bonds, $37,500; stocks in corporations, Federal Savings and Loan, $38,885.51; personal property, $2,425; real estate, $7,200; or a total of $88,740.29.

The trial court found that, under the will, plaintiffs, appellants herein, were entitled to receive out of Mrs. Flower's estate one-half of the cash on hand, only, at the date of her death, and accordingly entered judgment for them in the sum of $1,364.89, being one-half the amount of the bank deposits.

W. D. Flower died intestate in Florida on the 14th day of January, 1944, leaving no children. Under Florida law, Alma D. Flower inherited the entire estate left by W. D. Flower. Administration on his estate was closed on August 11, 1945, and the final report showed that the estate consisted of two savings accounts aggregating $14,979.63; checking accounts and cash in banks aggregating $6,433.39; note in the sum of $30,000; an automobile valued at $500; and some real estate.

The appellants, in appealing from the judgment, take the position that they are entitled, under the terms of the will, to one-half of the property of W. D. Flower, deceased, remaining at the time of the death of Alma Flower, or, at the least, are entitled to one-half of the first $40,000 of the W. D. Flower estate remaining at the death of Alma D. Flower.

We overrule the first contention. It seems clear to us that the language of the will restricted the relatives of W. D. Flower to one-half of $40,000 and no more, in any event. In the first paragraph she states that her brother, sisters and nieces are to divide one-half of $40,000 and all of the rest of the property left by W. D. Flower. Both the bequests to her people and to her deceased husband's people are clear that in no event are the relatives of her deceased husband to receive more than $20,000.

The question presented in the second point of error has given us no little difficulty. It is the contention of appellants that the use of the word "cash" in the third and concluding paragraph of the will, read in connection with the entire language of the will, means cash value, and the estate of W. D. Flower having been converted into bonds, corporate stock and other personal property, and there being in excess of $40,000 of such estate left at the date of the death of Alma Flower, the appellants are entitled to $20,000. The appellees, on the other hand, contend that the word "cash" has a definite and fixed meaning as ready money and to say it means anything else would be reading into the will something that is not there.

The word "cash" is ordinarily defined as that which circulates as money. United States v. Williams, D.C., 282 F. 324. It is also defined as money or its equivalent, usually "ready money." Kerlin v. Young, 159 Ga. 95, 125 S.E. 204. The Supreme Court of Texas, in Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779, 790, cites the following definition from Webster's New International Dictionary, 2nd Edition, Unabridged, as " 'B. A quantity of money, C. minted or current coin. 2. Com. a. money, especially ready money; strictly coin or specie, but also, less strict-

ly, bank notes, sight drafts or demand deposits at a bank.'"

The words "cash" and "money" as used in wills have been construed by the courts to include various kinds of personal property, where to restrict them to the ordinary, narrow meaning would result in the testator's having died intestate as to a portion of his estate. Paul v. Ball, 31 Tex. 10; Lane v. Railey, 280 Ky. 319, 133 S.W. 2d 74; In re McKendrie's Estate, 150 Misc. 665, 271 N.Y.S. 228; In re Thayer's Will, 86 Misc. 191, 149 N.Y.S. 141; In re Blackstone's Estate, 47 Misc. 538, 95 N.Y.S. 977; In re Mirick's Estate, 193 Misc. 211, 82 N. Y.S.2d 778; In re Carrillo's Estate, 187 Cal. 597, 203 P. 104; Ellet v. McCord, Tex.Civ.App., 41 S.W.2d 110. Other definitions may be found in 6 Words and Phrases, Cash, p. 246 et seq.

■ In construing a will it must be ascertained from the general context of the will whether the testator · used the words "money" or "cash" in a restricted or in a more comprehensive sense. Paul v. Ball, supra. In its more comprehensive sense "money" means wealth, the representative of commodities of all kinds. It is accordingly often popularly used as equivalent to "property," and when the intention of the testator so to use it is manifest, it may include all kinds of property, real and personal. 57 Am.Jur., p. 894, sec. 1349.

■ "'In determining whether or not certain words were used in their technical sense, the court should consider whether the drawer of the will was or was not familiar with the technical meaning of the words or terms used, * * *.'" Gilkey v. Chambers, 146 Tex. 355, 207 S.W.2d 70, 71.

The intention of the testator must be ascertained by considering the entire instrument, and the language of a single clause of it will not govern what is the evident intention in the use of that language when read in connection with other provisions. Jones' Unknown Heirs v. Dorchester, Tex.Civ.App., 224 S.W. 596; Burney v. Burney, 145 Tex. 311, 197 S.W.2d 334.

■ . The testator's intention must be ascertained from the language of the will itself, if possible, and, if not in contravention of some established rule of law or public policy, must be given effect. Jackson v. Templin, Tex.Com.App., 66 S.W.2d 666, 92 A.L.R. 873.

■ All the provisions of the will must be looked to for the purpose of ascertaining the real intention of the testator, and if this can be ascertained from the language of the instrument, then any particular paragraph which, if considered alone, might indicate a contrary intention, must yield to the intention manifested by the whole instrument. Darragh v. Barmore, Tex.Com. App., 242 S.W. 714; McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412.

■ The cardinal rule of construction of wills is that the intention of the testator will control and the courts should never adopt any rule of construction which has the effect of destroying the manifest intention of the testator. Lockett v. Wood, Tex.Civ.App., 84 S.W.2d 798. See also Cleveland v. Cleveland, 89 Tex. 445, 35 S.W. 145.

■ In construing a will form should be subordinated to substance and if the testator's intention can be ascertained from a reading of the whole will, such intention must be given effect, however informal the language. McMullen v. Sims, Tex.Com. App., 37 S.W.2d 141.

At the time of W. D. Flower's death he had $6,433.39 on deposit in the bank, and $14,979.63 in savings accounts. The largest single item was the $30,000 note. At the time testatrix executed her will, she did not have $40,000 in "cash" in the technical sense of that word. The only time she had that amount of "cash" or "money" on hand was after W. D. Flower's estate was closed and the money turned over to her. Shortly thereafter she bought $37,500 in U. S. Government bonds. At the time she executed the will she did not know how much she would receive from her husband's estate but did know that it would be probably in excess of $40,000.

In the first paragraph of the will she specifically states her desire that one-half of 40,000 left by W. D. Flower and all the rest of the property left by her husband, W. D. Flower, be divided by her relatives. The word "cash" is not used in said paragraph and no dollar mark is used. It is obvious that she was referring to a half of $40,000 of W. D. Flower's estate and not to a half of $40,000 "cash." In the second paragraph she evidences her desire that her husband's relatives receive the other one-half of $40,000 left by her husband, and no more. In this paragraph the word "cash" is not used. It is her intention, as disclosed by said language, to bequeath to her husband's relatives one-half of $40,000 left to her by her husband. We think the testatrix' intention, as shown by the first two paragraphs of the will, is to divide the first $40,000 of the estate left to her by her husband equally between his relatives and her relatives. That was the dominant purpose of the will as set out in the first two paragraphs. The third paragraph, reading, "Provision: If there is as much $40,000$^{00}$ cash, if not divide the balance—" does not, in our opinion, contradict the provisions of the first two paragraphs when considered in connection with the whole instrument.

The testatrix was not using the word in its technical or limited sense. In paragraph one she wrote, "All of my Personally Property or (Own Property)" in referring to the property she possessed other than that inherited from W. D. Flower, when actually she owned all of the property left by him. That language indicates that she was not using words in a technical sense. In the first two paragraphs she was referring to all the property left her by her husband and not to "cash."

We think it not speculative to say that she invested the "cash" in Government bonds for the purpose of enhancing her estate and not for the purpose of defeating the bequests to her husband's relatives. She did not specifically mention bonds, corporate stocks, or any other kind of property in her will.

She intended by the "Provision," we think, that if the cash value of her deceased husband's estate did not amount to $40,000 at the time of her death, the remaining portion of his estate should be divided half and half between the two sets of beneficiaries.

Inasmuch as her husband did not leave "cash" in the amount of $40,000 and at the time of making the will she did not have that much "cash" on hand, it is manifest that she intended to charge one-half of the estate left to her by her husband up to the amount of $40,000 with the payment of the bequests to his relatives.

The bequests made by her were greater than the amount of "cash" on hand when she executed the will. She must have had in mind the total value of her husband's estate or the proceeds from the liquidation thereof.

She knew when she executed the will she did not have sufficient "cash" to pay the bequests set out in her will, and there would be no money left to pay such bequests unless such money left by her husband, or property in which said money had been invested, was to be used in paying such bequests. To hold otherwise would be to charge her with deliberately inserting in her will a worthless provision. She knew when she bought bonds with the proceeds of her husband's estate that thereafter she would not have sufficient "cash" to pay the bequests to her husband's relatives unless the bonds or the proceeds therefrom were used to pay such bequests. Yet, she did not change her will. The estate received from her husband was not conveyed or disposed of by her. She merely changed the estate from money to bonds and other securities. The bequests made by her were not revoked by such transfer of funds into securities, and there was no ademption as to the bequests made to appellants.

Considering the entire instrument from its four corners, we have concluded that the testatrix intended by her will that her husband's relatives have $20,000 of the estate left by W. D. Flower, provided there was as much as $40,000 remaining of such estate at her death, and that she intended that if less than $40,000 remained of the estate inherited from her husband, such

relatives were to receive one-half of what did remain. This intention is further shown by the fact that although all the property was hers to dispose of as she pleased, she treated it as two entities, to-wit, that which she inherited from her husband and that which she otherwise owned. Since the dominant purpose of her will was to leave to her husband's relatives one-half of $40,000, or half of whatever amount remained of his estate at the time of her death if less than $40,000, to give a narrow or restricted meaning to the word "cash" would be to thwart her intention and desire as expressed in her will.

It is therefore our opinion that Mrs. Flower intended for her husband's relatives to receive one-half of $40,000 of the W. D. Flower estate if that much remained at her death, and if less than $40,000 remained, one-half of such amount as remained, and judgment is so rendered.

Judgment reversed and rendered.

BOYD, J., not participating.

MASSEY, Chief Justice (concurring).

In agreeing with the reasoning and holding as expressed in the opinion written by my colleague, Associate Justice RENFRO, I take occasion to note that in the case of Kenaday v. Sinnott (1900), 179 U.S. 606, 21 S.Ct. 233, 45 L.Ed. 339, a very similar and nearly identical question was decided by that court upon the same applicable principles of law.

In that case the court held that its decision turned upon the question of whether an irrebuttable presumption arises that the testator, by reducing the amount of money on hand at the date of his will, intended that the amount of such reduction, though remaining in his assets in another form, should be distributed to his next of kin rather than to his wife to whom the bequest of money had been made by his will. It is noted that the testator had reduced the amount of his cash money by way of purchase of $9,000 in United States bonds between the date of execution of his will and date of his death.

The court held that where an intention of benefit was once expressed, to make its taking effect turn upon the contingency of the condition of the testator's property remaining unchanged, instead of upon the continuance of the same feelings which in the first instance prompted the selection of the legatee, required, as it ought, clear language to convey that intention.

Then, with due honors paid to the legal necessity of applying principles of law of ademption to legacies of the categories "demonstrative" and "specific", the court held that whether a legacy should be treated as a demonstrative legacy, or as one dependent exclusively upon a particular fund for payment, is a question of construction, to be determined according to what may appear to have been the general intention of the testator, and in a case where it was not clearly apparent that the testator, by converting money into bonds, intended to revoke the general intention of benefit expressed by his will, such general beneficial intention will prevail and the bequest will be considered by law as a demonstrative legacy, not subject to ademption. The court further elaborated that legacies will not be held specific when the result would be that the mere transmutation of money into securities raised an irrebuttable presumption of ademption inconsistent with the intention of the testator as plainly deducible from all the terms of his will taken together.

There is no question but what at the time of the making of the will, here under construction, that Mrs. Flower fully intended that her husband's kin were to receive $20,000 in cash from the proceeds of her deceased husband's estate, held by her during her lifetime, and left of said estate fund at time of her death. This intention was to be conditioned only upon there being at least $40,000 in value as to said deceased husband's estate, remaining at date of her death. And, in event she might have found it necessary to use the corpus of said estate to such an extent that its value (as of the date of her death) was less than $40,000, then and upon that contingency, she intended to provide and did provide by her will that her husband's kin should receive fifty per cent of the amount so left of that fund. There is

no evidence that Mrs. Flower, in converting the money in question into securities, intended any abrogation of the bequest to her deceased husband's kinsmen. Under such circumstances we must consider that her intentions as originally expressed remained unaltered. Having arrived at this conclusion, I am of the opinion that the law requires the legacy in question to be construed as a demonstrative legacy not subject to ademption.